[No. 25779.  *En Banc.*  August 6, 1935.]

JOHN D. MORROW, *Appellant,* v. H. H. HENNEFORD
et al., *Respondents.*[1]

[1]Reported in 47 P. (2d) 1016.

626

*Little & Collett, Robert W. Reid,* and *Robert L. Flanders,* for appellant.

*The Attorney General, W. A. Toner,* and *R. G. Sharpe, Assistants,* for respondents.

GERAGHTY, J.—This action was brought by the plaintiff, who conducts a restaurant business in the city of Seattle, to enjoin the members of the state tax commission from enforcing, as against him and others similarly situated, the provisions of title III, chapter 180, Laws of 1935, p. 721 [Rem. 1935 Sup., § 8370-16 *et seq.*], levying a sales tax. After trial to the court, judgment was entered dismissing the plaintiff's action, and this appeal followed.

The appellant challenges the constitutionality of title III upon several grounds, and also charges that the members of the tax commission are, in certain respects, acting in excess of the authority conferred upon them by the act.

We first direct our attention to appellant's contention that the sales tax levied by the act is a direct property tax, lacking uniformity in its application and therefore in violation of the fourteenth amendment to the Federal constitution and article VII, § 1, of the state constitution as revised by its fourteenth amendment.

If appellant's contention that the tax is a direct levy upon property is correct, the act is vulnerable to constitutional objection. The respondents contend that the tax is not a direct levy upon property, but an excise, not controlled by the cited provisions of the Federal and state constitutions.

An excise tax has been defined as one levied upon the manufacture, sale, or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges. 1 Cooley on Taxation (4th ed.), § 42.

It is defined by the supreme court of the United States to be an inland imposition, sometimes upon the consumption of the commodity and sometimes upon the retail sale; sometimes upon the manufacturer and sometimes upon the vendor. *Pacific Ins. Co. v. Soule,* 74 U. S. 433.

In an opinion just handed down by the supreme court of Arkansas, where a statute strikingly similar in detail to the one here under consideration was sustained, the court said:

"What kind of a tax is it? What is it a tax upon? Some of counsel say that it is a property tax, others that it is an occupation tax, and others that it is either a gross income tax or an occupation tax, while another says it has all the earmarks of a property tax. Counsel for appellant and those *amici curiae* supporting that view contend that it is neither a tax on property, an occupation tax nor a tax on gross income; that it is an excise tax, or privilege tax, and the argument is made with some force that it is a tax upon the right to acquire personal property by purchase for use or consumption. It is generally agreed that unless the tax is prohibited by express language or by necessary implication in the constitution, it is a valid levy. . . . Decisions of courts of other states generally hold that similar provisions of their constitutions for equality and uniformity apply only to taxes on property and not to excises and privileges. In 26 R. C. L. p. 225, it is said: 'It is generally held that a constitutional provision requiring taxation to be equal and uniform applies only to taxes on polls and property and has no reference whatever to excises.' "

After citing and analyzing numerous authorities, the court announced its conclusion in the following language:

"From these decisions we are bound to conclude that the tax levied by said Act 233 is an excise tax or privilege tax that is not prohibited. Whether it is such a tax on the purchase or the sale, or the right to acquire personal property for use or consumption, or whether it is a tax on the transaction, it is unnecessary to determine. Whatever it is and by whatever name it may be called, its character must be determined by its incidents, and its validity must be measured by the Constitution under the rules stated. It is certain that it is not a tax levied upon anyone's occupation, therefore, not an occupation tax. The merchant is not taxed. He is a tax collector. The tax is required of the purchaser and the merchant must collect and account for it. The buyer's occupation is not taxed. It is not a pursuit or occupation to buy at retail for use or consumption." *Wiseman v. Phillips,* 84 S. W. (2d) (Ark.) 91.

In *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91, in upholding chapter 191, Laws of 1933, p. 869 [Rem. 1933 Sup., § 8326-1 *et seq.*], imposing a tax upon the privilege of engaging in business activities, after quoting article VII, § 1, of the state constitution, we said:

"This being an excise tax, the legislature, under the 14th amendment to our state constitution, has very broad power, and we cannot interfere with that power except for arbitrary action, clear abuse, or constructive fraud appearing on the face of the act or from facts of which we may take judicial knowledge."

The appellant relies principally upon *Stewart Dry Goods Co. v. Lewis,* 294 U. S. 550, 55 S. Ct. 525. In that case, the court held unconstitutional a statute of Kentucky imposing a graduated gross sales tax. The tax was held to be invalid not because it was one upon

sales, but because the rate of tax was increased as the volume of sales increased. The statute was held to be

". . . unjustifiably unequal, whimsical, and arbitrary, as much so as would be a tax on tangible personal property, say cattle, stepped up in rate on each additional animal owned by the taxpayer, or a tax on land similarly graduated according to the number of parcels owned."

That the court did not condemn a flat tax, such as we have here, is abundantly evidenced by a reading of the opinion.

In the course of its opinion, the court, referring to the suggestion that the ad valorem property tax laid on Kentucky merchants bore more heavily upon the little dealer than upon his bigger competitor, said:

"This fact may indeed be a proper reason for adjusting the tax burden so as better to reflect the fruits of the enterprise; but it can afford no excuse for an arbitrary and unequal imposition as between persons similarly circumstanced. The record fails to show that an income tax or a *flat tax on sales* would not accomplish the desired end. The adoption of laws of the latter description by many of the states is a practical confirmation of the view that they are effective measures." (Italics ours.)

In a footnote to the opinion, reference is made to the large number of states where legislation of this description, presumably valid, has been enacted.

The court's holding was interpreted by Judge Cardozo, in his dissenting opinion, as follows:

"The prevailing opinion commits the court to a holding that a tax upon gross sales, if laid upon a graduated basis, is always and inevitably a denial of the equal protection of the laws, no matter how slight the gradient or moderate the tax."

Manifestly, this case is not applicable to the statute before us, where the rate of levy is uniform.

In *Bromley v. McCaughn,* 280 U. S. 124, 50 S. Ct. 46, the court held that a tax imposed upon transfers of property by gift is not a direct tax, but an excise on the exercise of one of the powers incident to ownership, and need not be apportioned. The court said:

"Whatever may be the precise line which sets off direct taxes from others, we need not now determine. While taxes levied upon or collected from persons because of their general ownership of property may be taken to be direct, *Pollock v. Farmers Loan & Trust Company,* 157 U. S. 429, 158 U. S. 601, this Court has consistently held, almost from the foundation of the government, that a tax imposed upon a particular use of property or the exercise of a single power over property incidental to ownership, is an excise which need not be apportioned, and it is enough for present purposes that this tax is of the latter class. *Hylton v. United States, supra,* cf. *Veazie Bank v. Fenno,* 8 Wall. 533; *Thomas v. United States,* 192 U. S. 363, 370; *Billings v. United States,* 232 U. S. 261; *Nicol v. Ames, supra; Patton v. Brady,* 184 U. S. 608; *McCray v. United States,* 195 U. S. 27; *Scholey v. Rew,* 23 Wall. 331; *Knowlton v. Moore, supra;* see also *Flint v. Stone Tracy Co.,* 220 U. S. 107; *Spreckels Sugar Refining Co. v. McClain,* 192 U. S. 397; *Stratton's Independence v. Howbert,* 231 U. S. 399; *Doyle v. Mitchell Brothers Co.,* 247 U. S. 179, 183; *Stanton v. Baltic Mining Co.,* 240 U. S. 103, 114.

"It is a tax laid only upon the exercise of a single one of those powers incident to ownership, the power to give the property owned to another. Under this statute all the other rights and powers which collectively constitute property or ownership may be fully enjoyed free of the tax. So far as the constitutional power to tax is concerned, it would be difficult to state any intelligible distinction, founded either in reason or upon practical considerations of weight, between a tax upon the exercise of the power to give property *inter vivos* and the disposition of it by legacy, upheld in *Knowlton v. Moore, supra,* the succession tax in *Scholey v. Rew, supra,* the tax upon the manufacture and sale of colored oleomargarine in *McCray v. United*

*States, supra,* the tax upon sales of grain upon an exchange in *Nicol v. Ames, supra,* the tax upon sales of shares of stock in *Thomas v. United States, supra,* the tax upon the use of foreign built yachts in *Billings v. United States, supra,* the tax upon the use of carriages in *Hylton v. United States, supra;* . . .

"It is true that in each of these cases the tax was imposed upon. the exercise of one of the numerous rights of property, but each is clearly distinguishable from a tax which falls upon the owner merely because he is owner, regardless of the use or disposition made of his property. See *Billings v. United States, supra;* cf. *Pierce v. United States,* 232 U. S. 290. . . .

"The power to give cannot be said to be a more important incident of property than the power to use, the exercise of which was taxed in *Billings v. United States,* and even though differences in degree may be carried to a point where they produce distinctions in kind, the present levy falls so far short of taxing generally the uses of property that it cannot be likened to the taxes on property itself which have been recognized as direct. It falls, rather, into that category of imposts or excises which, since they apply only to a limited exercise of property rights, have been deemed to be indirect and so valid although not apportioned."

We are of the opinion that the sales tax here involved is an excise, not required to be apportioned, and therefore not obnoxious to the cited provisions of the state and Federal constitutions.

■ Another contention of the appellant is that the provision of the act authorizing the use of tokens, in payment of the tax upon small purchases, violates article I, § 10, of the Federal constitution, which provides:

"No state shall . . . coin money; emit bills of credit; make anything but gold and silver coin a tender in payment of debts; . . ."

These tokens are provided for in the act to facilitate the collection of the tax upon small purchases where

the amount collectible is less than one cent. The tokens are obviously not intended to pass currently as coin. They are to be used, rather, as evidence that the required tax has been paid. We are familiar with the similar use of tokens in many other activities, especially their common use by transportation companies in our cities.

We are unable to see how the appellant is in any way injured by their use. The limitation upon the power of the states to coin money or emit bills of credit is a reservation in favor of the Federal government, and until it sees fit to question the state's use of tokens, it would seem that the appellant can have no cause to complain.

█ Appellant contends that the tax commission, in promulgating schedules for the use of tokens or scrip, is undertaking to supplement and enlarge upon the. enactment of the legislature, thereby forcing the payment of a greater rate than two per cent; that the purchaser is required to pay a one-fifth cent token on a purchase of five cents, thereby imposing a tax of four per cent instead of two per cent, as provided by the legislature.

The schedule issued by the tax commission is for convenience in computing the tax. While it is true that, upon a five-cent purchase, a one-fifth cent token is paid, its use arises out of the necessity of the case. In any event, the appellant is not injured by the arrangement, since the tax is paid by the purchaser.

█ Section 21 of the act provides that the tax imposed under title III shall be paid by the buyer to the seller, and it is made a duty ·of the seller to collect from the buyer the full amount of the tax payable in respect of each sale, and in case any seller fails to collect the tax, he is primarily liable to the state for the amount.

The appellant objects to this provision as imposing the burden of an uncompensated service upon him. This provision, as we view it, is an administrative detail, since the consumer always ultimately pays. It is the evident purpose of the law to make for honest dealing by having the purchaser pay the tax in the first instance, so that no opportunity is offered the seller to increase the price to the consumer beyond the definite amount of the tax.

The tax is denominated a sales tax, although it is paid by the buyer. A sale has been defined as a contract for the transfer of property from one person to another for a valuable consideration, and in every sale two parties are concerned, the buyer and the seller. Here, the duty of paying the tax is imposed upon the buyer; its collection and transmittal to the state upon the seller. It is within the legitimate power of the legislature to impose the duty of collecting upon the retailer as a reasonable regulation of his business.

"Here the purpose of the act is to impose a tax upon the transaction of a purchase at retail for use or consumption of articles not exempt and to regulate the business of the retailer by requiring him to collect the tax and pay it over to the Commissioner of Revenue. This is not an unreasonable regulation, 'for it does not involve the payment of any fee, nor the performance of any unreasonable task.'" *Wiseman v. Phillips*, 84 S. W. (2d) (Ark.) 91.

The appellant also contends that the act is unconstitutional because, while it taxes the prepared foods which he serves the patrons of his restaurant, it exempts from the tax sales of milk, raw fruits, vegetables, butter, eggs, cheese and bread sold by retailers for consumption off the premises.

The courts hold that a wide discretion is conceded to the legislature in classifying for the purpose of excise taxation.

"A very wide discretion must be conceded to the legislative power of the State in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." *Brown-Forman Co. v. Kentucky,* 217 U. S. 563, 573, 30 S. Ct. 578.

See, also, *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91; *Supply Laundry Co. v. Jenner,* 178 Wash. 72, 34 P. (2d) 363.

What we have just said answers other contentions made by appellant that the act is unjustly discriminatory as against himself and others similarly situated, in that it exempts from its operation "casual and isolated sales by a person who is not engaged in the business of selling tangible personal property at retail." The act purports to be a tax upon sales made in the course of business. There is an obvious distinction between such sales and the casual sales covered by the exemption, and one furnishing a reasonable basis for classification. *Reif v. Barrett,* 355 Ill. 104, 188 N. E. 889.

The appellant contends that the act before us was passed by the legislature subsequent to the expiration of the sixty-day period to which sessions of the legislature are limited by the state constitution. The act comes before us fair upon its face. Its passage on the 14th day of March, 1935, being within the sixty-day period, is duly certified by the presiding officers of the two houses of the legislature. It is not permitted to us to look beyond this certification for the purpose of ascertaining whether all the steps enjoined by the constitution for the passage of laws were followed by the legislature. In *State ex rel. Reed v. Jones,* 6 Wash.

452, 34 Pac. 201, 23 L. R. A. 340, this court, speaking through Judge Hoyt, himself president of the convention that drafted the constitution, said:

"Upon principle, then, in view of the division into departments under our form of government, each of equal authority, one department cannot rightfully go behind the final record certified to it or to the public from either of the other departments. And the judicial department is no more justified in going behind the final act of the legislature to see if it has obeyed every mandatory provision of the constitution than has the legislature to go back of the final record made by the courts to see whether or not they have complied with all constitutional requirements."

The court reached its conclusion in that case after an exhaustive examination of the authorities bearing upon the question. We have repeatedly reaffirmed unqualifiedly the rule there announced. In *State ex rel. Dunbar v. State Board,* 140 Wash. 433, 249 Pac. 996, it is said:

"Finding an enrolled bill in the office of the secretary of state, unless that bill carries its death warrant in its hand, the courts will make no investigation of the antecedent history connected with its passage, except as such an investigation may be necessary in case of ambiguity in the bill for the purpose of determining the legislative intent. *Scouten v. Whatcom,* 33 Wash. 273, 74 Pac. 389. As chief justice Dunbar, in *Parmeter v. Bourne, supra* [8 Wash. 45, 35 Pac. 586], said for this court:

" 'This argument is squarely against the decision in *State ex rel. Reed v. Jones,* 6 Wash. 452 (34 Pac. 201), where this court held that, where an act of the legislature had been properly certified, courts had no authority to inquire into any prior proceedings on the part of the legislature to ascertain whether the mandatory provisions of the constitution had been complied with, but that the enrolled bill properly certified to was conclusive evidence of that question. This decision was based upon the theory that the legislature

was one of the coordinate departments of the government, with equal authority with the others, and that the assumption is a false one, that the "mandatory provisions of the constitution are safer if the enforcement thereof is entrusted to the judicial department than if so entrusted to the legislature." Or, "in other words," said this court, "courts holding the other view have acted upon the presumption that their department is the only one in which sufficient integrity exists to insure the preservation of the constitution." ' "

Having reached the conclusion that the act is free from the constitutional objections urged by appellant, and that the members of the tax commission, in its enforcement, have not exceeded the authority conferred upon them, the judgment of the trial court will be affirmed.

MAIN, MITCHELL, BLAKE, BEALS, TOLMAN, HOLCOMB, and STEINERT, JJ., concur.

Chief Justice Millard is temporarily confined in the hospital and unable to express his views in this case. Because of the emergency of the case, the opinion is filed without any expression from him.