[No. 33215.  Department One.  November 3, 1955.]

HAROLD KAESER, *Appellant,* v. THE CITY OF EVERETT, *Respondent.*[1]

*Taylor & Revelle,* for appellant.

*Leslie R. Cooper,* for respondent.

OTT, J.—The city of Everett, by ordinance, authorized the establishment of two local improvement districts, Nos. 624 and 626.  In its call for bids for the construction of sewers therein, the bidder was requested to submit his bid on a form of "proposal and contract" prepared and furnished by the city.  Throughout this opinion we shall mention only the contract relating to local improvement district No. 624, but what we say with reference to this contract will apply equally to the contract relating to local improvement district No. 626.

Harold Kaeser, doing business as Harold Kaeser Co., was the successful bidder, and the form of contract attached to the proposal was signed by both parties.  The proposal and contract provided:

[1] Reported in 289 P. (2d) 343.

"Sales Tax to be included in the prices of the unit price bid as per Tax Comm. published rule No. 171."

The contractor paid the sales tax to the state, and thereafter demanded reimbursement therefor from the city. The city refused the demand, contending that the amount of its tax was included in the unit price bid. This action followed.

The cause was tried to the court, sitting without a jury. At the trial, the plaintiff contractor contended that he did not include the sales tax in his unit price bid because the construction of sewer facilities is specifically excluded from the purview of rule No. 171.

The court found that the plaintiff had failed to establish any obligation or contract on behalf of defendant city to reimburse him for the sales tax paid by the plaintiff to the state.

From the judgment of dismissal, the plaintiff has appealed.

Appellant assigns as error the above finding of the trial court, and its failure to enter judgment for appellant.

■ Under the provisions of RCW 82.08.050, the liability for the payment of a sales tax is upon the buyer, but the duty to collect and remit it to the tax commission is upon the seller. *Morrow v. Henneford,* 182 Wash. 625, 632, 47 P. (2d) 1016 (1935). Pursuant to RCW 82.08.060, the tax commission has promulgated certain rules relating to the collection and payment of excise taxes.

This action involves simply the city's method of payment of its retail sales tax, which it was required to pay, as a buyer and consumer, upon materials and supplies used in the construction of the sewers. The respondent, city of Everett, did not propose to avoid its obligation to pay the sales tax, or attempt to shift its tax liability to appellant. Recognizing that it was obligated to pay the tax, the city specifically requested the bidders to include the amount of the city's excise tax in their unit price bids, in the following language: "Sales Tax to be included in the prices of the unit price bid as per Tax Comm. published rule No. 171." The reason the city requested a *unit price bid* was to avoid the payment of tax upon that portion of the construction work which had to do with the clearing of land and moving

of earth, which is nontaxable under the tax commission's published rule No. 170, provided that such exempt items can be segregated and identified from the taxable items.

The appellant contends that he did not include the amount of the city's sales tax in his unit price bid because, upon reading rule No. 171, he learned that it applied to bids involving the repair and improvement of publicly owned streets, and that the "constructing of sewage disposal facilities" was excluded from the rule. However, the *method* of collecting the sales tax, as established by rule No. 171, is precisely the method the city wanted the bidders to use in submitting their bids on this project.

With reference to the collection and payment of retail sales tax, rule No. 171 provides as follows:

"The Retail Sales Tax applies upon the sales to such contractors of all materials, . . . and supplies used or consumed in the performance of such contracts.

"The Retail Sales Tax does not apply upon any portion of the *charge made by such contractors.*" (Italics ours.)

Under rule No. 171, "The Retail Sales Tax applies upon the sales to such contractors." A contractor then includes in his unit price bid, as a part of his cost, the sales tax which he contemplates he will have to pay, and hence the state cannot request payment a second time "upon any portion of the charge made [to the city] by such contractors."

The appellant poses the question, "Upon examination of the [city's] proposal, he [the contractor] would notice reference to rule 171. Rule 171 stated this type of sewer was excluded. What was the contractor to do?"

Reading rule No. 171, the contractor knew that *materials* and *supplies* used or consumed in the performance of a contract were subject to the retail sales tax. He knew that, under rule No. 171, contractors are required to pay the sales tax to the state; that the contractors could include this tax item as part of their cost in the bid price, and that the state does not collect another tax "upon any portion of the charge made by such contractors." The contractor, by reading the city's proposal, knew that the city definitely wanted the "Sales Tax to be included in the price of the unit price bid,"

and that, applying the tax collection method set out in rule No. 171, the tax would be collected from the city by including it in the unit price bid, as the proposal plainly directed.

The terms of the contract were plain and unambiguous. The signed contract stated:

"I have personally and carefully examined the plans, specifications and form of contract for the work to be done . . . and having made the necessary examinations, hereby propose to furnish all material and to perform all labor which may be required to complete said work . . . upon the terms and conditions provided in said . . . contract."

■ The trial court correctly found that the appellant had failed to prove any obligation or contract on the part of the respondent city to reimburse appellant for the sales tax paid by him to the state. To hold otherwise would require the city to pay its sales tax twice—once to the contractor and again to the state.

The judgment is affirmed.

HAMLEY, C. J., SCHWELLENBACH, and WEAVER, JJ., concur.

DONWORTH, J. (dissenting)—I am unable to agree with the result reached in the majority opinion and feel compelled to set forth my views in some detail. While there is practically no dispute as to the material facts in this case, they are somewhat complicated, and I deem it necessary to set forth the facts rather fully in this dissenting opinion.

The city of Everett issued a call for bids for the construction of a sanitary sewer in local improvement district No. 624. (I shall refer to only one of the contracts involved in this case, since both contracts are in all important aspects identical.) The bids were required to be submitted on printed and mimeographed "forms of proposal," prepared and supplied by the city. Plaintiff submitted his bid by filling out such a form and delivering it to the city. The city accepted plaintiff's bid, and this "form of proposal," upon being executed by both parties, became the contract for the performance of the work described therein.

In preparing his bid on this form, plaintiff was required to submit "unit bids" for each of the segregated items of labor and material involved in the contract. For the purpose of determining the incidence of retail sales tax, each of the various units of the contract should be classified and placed in one of the following three separate and distinct categories:

Category "A" consists of those items involving *the clearing of land and the moving of earth*. (See RCW 82.04.050 and Rule 170.) Category "B" consists of the items involving *the building, repairing, or improving of a public street*. (See RCW 82.04.050 and Rule 171.) Category "C" consists of all the remaining items in the contract which may be collectively described as *the improving of real property by attaching or installing articles of personal property*. (See RCW 82.04.050 and Rule 170.)

Immediately above the space provided for the bidder's signature on the printed form of proposal was this typewritten statement:

"Sales Tax to be included in the prices of the unit price bid as per Tax Comm. published rule No. 171."

Plaintiff fully performed the terms of the contract. In order to receive the "retained percentage" (15 per cent of the contract price), it was necessary for plaintiff to furnish the city's disbursing officer with a certificate from the state tax commission showing the payment of taxes as required by RCW 82.32.250 (See RCW 60.28.010). Accordingly, plaintiff submitted the contract to the tax commission for the computation of the proper amount of taxes. On October 28, 1954, plaintiff paid to the state of Washington the sum of $3,515.17, the same being the amount of the retail sales tax computed by the tax commission as being payable in connection with the items of the contract coming within category "C," *supra*. Thereafter, the city paid the retained percentage to plaintiff.

Plaintiff requested the city to reimburse him for the sales tax paid to the state on the items in category "C," and, upon the city's refusal to do so, commenced this action to compel

reimbursement. Paragraph 5 of the amended complaint alleged:

"That the total amount of material going into the performance of the contract and which was sold by the plaintiff to the defendant totaled $117,172.29. That a sales tax became due to the State of Washington on account of such sale, in the amount of $3,515.17. The plaintiff has paid the said sum to the State of Washington and demands repayment thereof from the defendant. That a detailed statement is attached hereto as Exhibit 'A'."

The city's answer admitted performance of the contract, denied the allegations contained in paragraph 5, and by way of affirmative defense, alleged:

"II. That under the terms of said contract . . . the contractor, plaintiff herein, agreed to include the state sales tax in the price of the unit bid; that it was understood and agreed by and between the plaintiff and defendant that the total contract price should include sales tax."

The reply denied each and every allegation contained in paragraph II. As the case came on for trial before the court, sitting without a jury, the following transpired:

"THE COURT: . . . as I understand it, the plaintiffs here have paid the tax? MR. COOPER: [defendant's attorney] That is right. THE COURT: Well, now, is there any question left in the case then as to the—as to whether or not the tax should have been paid? MR. COOPER: No. THE COURT: Isn't our problem then limited to whether or not they are entitled to get that tax back from the city? MR. COOPER: That's exactly right. THE COURT: Has the contractor been paid according to his bid? MR. COOPER: He has been paid all but the amount he claims in this case. . . ."

With the issue so limited, the trial was had. Each party called but one witness. Plaintiff took the stand as his sole witness, and the defendant's only witness was the city engineer, who prepared the form of the contract. It is worthy of note that plaintiff testified he had never before contracted with a municipal corporation, and that the city engineer testified that, while he had previously contracted for street repair and improvements, this was his first experience in contracting for the construction of a sanitary sewer.

There was admitted in evidence a copy of the tax commission's published rules (revised March 9, 1954). The court's attention was specifically called to rules 170 and 171 contained in that publication. Rule 170, which relates, generally, to the improvement of real property (see categories "A" and "C," *supra*), provides, in part:

"Prime contractors are required to collect from consumers the Retail Sales Tax measured by the full contract price, less such portion thereof as may be separately stated for the clearing of land or moving of earth, as herein provided."

Rule 171 relates to the building, repairing, or improving of a publicly owned street or road (see category "B", *supra*), and contains the following provision:

"The Retail Sales Tax applies upon the sales *to such contractors* of all materials, including . . . equipment and supplies used or consumed in the performance of such contracts.
"The Retail Sales Tax does *not* apply upon any portion of the charge made *by such contractors*." (Italics mine.)

At the conclusion of the trial, the court determined the sole issue in the case in favor of the city, holding that, because of the typewritten statement (referred to above) immediately preceding plaintiff's signature on his bid, there was included in the bid all of the city's retail sales tax liability on the contract, and that plaintiff was not entitled to recover any sum from defendant. Findings, conclusions, and judgment were subsequently made and entered dismissing plaintiff's cause of action. From this judgment, plaintiff appeals and assigns error to finding of fact No. 2, which reads as follows:

"That the sales tax due the State of Washington has been paid by the plaintiff and that the plaintiff has failed to establish any obligation or contract on behalf of the City of Everett to reimburse the plaintiff for the sum of $3,515.17 sales tax paid by plaintiff to the State of Washington in connection with Local Improvement District No. 624."

The majority opinion herein affirms the judgment of the trial court and describes the question involved in the case in this language:

"This action involves simply the city's method of payment of its retail sales tax, which it was required to pay, as a buyer and consumer, upon materials and supplies used in the construction of the sewers."

To my mind, the majority opinion, in affirming the judgment of the trial court, is erroneous for the reasons, among others, (a) that finding of fact No. 2, while almost entirely a conclusion of law, is contrary to statutes hereinafter referred to; (b) that, in construing the contract, the court did not consider the instrument in its entirety, nor was the language employed therein construed most strongly against the party choosing the words and in favor of the other party; and (c) that the findings of fact made do not support the judgment entered by the trial court.

In this dissent, I will consider the tax aspect of this case and attempt to demonstrate as briefly as possible the fallacy contained in the majority opinion.

In order to understand the operation of a tax, it is necessary to analyze that tax. This can be accomplished by a breakdown of the statutes relating to the state retail sales tax according to the following classical process of tax analysis:

Nature: Excise tax
Subject: All sales at retail (or retail sales)
Measure: Selling price
Rate: Three per cent of selling price
Taxpayer: Buyer (or consumer)
Payment: Buyer pays tax to seller, who remits to state.

Throughout its many and varied applications, the Washington state retail sales tax remains constant in these characteristics. The nature, subject, measure, rate, taxpayer, and manner of payment of that tax never vary in the slightest degree. (There are certain exceptions to this statement —found only in unusual cases—which are of no importance here.) The incidence of the tax, which may attain a wide degree of variance, is the matter of prime concern in this case. It is essential to the existence of the tax that there be a nonexempt retail sale.

The legislature has provided that there is levied a tax on all retail sales. RCW 82.08.020. The term "retail sales"

has been defined by the legislature. RCW 82.04.050. If a particular business transaction or contract of sale does not come precisely within the meaning of "retail sale" as there defined, that event is not subject to the retail sales tax. The legislature has seen fit to abstain from attempting to legislate with regard to the myriad of details in the administration and enforcement of the tax in its individual applications. Such matters have been made the responsibility of the tax commission. RCW 82.32.300.

The tax commission's published rules and the statutes must be applied, then, to ascertain the incidence of taxation in connection with the contract in question. Pursuant thereto, the following result is achieved:

Category "A." The sale of services, or charges made, for the clearing of land and the moving of earth constituted a sale at retail to the city. RCW 82.04.050. The tax commission, however, has already ruled that, in this particular contract, the segregation and accounting requirements of RCW 82.04.050 and of rule 170 had been fully complied with, and that the sale (in this category) thus qualified as being exempt from retail sales tax.

Category "B." The sale or charge made by the contractor in respect to the building, repairing, or improving of public streets *did not* constitute a sale at retail to the city. RCW 82.04.050. The legislature has elsewhere provided that a contractor performing such work is the "consumer" of the personal property used or consumed in such work. RCW 82.04.190(3). The sale by the supplier to the contractor constituted the sale at retail, and the contractor had to pay, and the supplier had to collect, a sales tax in the amount of three per cent of the selling price of the personal property involved. RCW 82.08.020, 82.08.050. See rule 171.

Category "C." The remainder of the contract, being that portion dealing with the improving of real property by attaching or installing articles of personal property thereto, is a sale at retail to the city. The city, as buyer, became liable for the sales tax thereon, measured by the contract price at the rate of three per cent. RCW 82.04.050. See

rule 170. Appellant contractor was required to collect and pay to the state the tax on this sale. In this action, he seeks to compel the city to reimburse him for the payment so made. The fact that he had to pay this tax *before* receiving final payment from the city (RCW 82.32.250) is immaterial.

The majority opinion, in affirming the trial court's action in dismissing appellant's cause of action and thus denying him reimbursement, says:

"The trial court correctly found that the appellant had failed to prove any obligation or contract on the part of the respondent city to reimburse appellant for the sales tax paid by him to the state."

Such a determination, it seems to me, completely disregards the pertinent statutes. The material portions thereof are as follows:

"There is levied and there shall be collected a tax on each retail sale in this state equal to three percent of the selling price. . . ." RCW 82.08.020.

"The tax hereby imposed shall be paid by the buyer to the seller, and each seller shall collect from the buyer the full amount of the tax payable in respect to each taxable sale . . .

"In case any seller fails to collect the tax herein imposed . . . whether such failure is the result of his own acts or the result of acts or conditions beyond his control, he shall, nevertheless, be personally liable to the state for the amount of the tax.

"*The amount of tax, until paid by the buyer to the seller or to the commission, shall constitute a debt from the buyer to the seller* and any seller who fails or refuses to collect the tax as required with intent to violate the provisions of this chapter or to gain some advantage or benefit, either direct or indirect, and any buyer who refuses to pay any tax due under this chapter shall be guilty of a misdemeanor." (Italics mine.) RCW 82.08.050.

"Each seller, . . . shall make out a return . . . upon forms to be provided by the commission, setting forth the amount of all sales, nontaxable sales, taxable sales, the amount of tax thereon, . . . The tax accrued under the provisions of this chapter, whether or not collected from the buyer shall be paid by the seller to the commission in bimonthly installments at the time of transmitting the return above provided for." RCW 82.08.070.

Applying these statutes and rule 170 to the facts of this case, and considering the admissions of respondent's counsel in the quoted colloquy, in my opinion, there is established *as a matter of law* an obligation on the part of respondent to reimburse appellant for the tax payment involved.

The majority opinion places great reliance upon the above quoted typewritten sentence in the contract in holding that it was applicable to the entire contract without regard to whether the particular "unit" came within the purview of rule 170 or rule 171. As I see it, the contract is not ambiguous, and the sentence refers only to those "units" of the contract which come within the scope of rule 171.

In holding that the amount of the bid included the city's tax liability, the majority overlooks an important administrative detail. The tax commission's published rules (revised March 9, 1954, p. 8) require "that the buyer shall pay the tax to the seller as an item separate from the selling price." When only one price is stated, and no separate item for tax is shown, it is deemed that the selling price alone is stated.

As far as I am aware, the *method of payment* of the retail sales tax remains constant as described in RCW 82.08.020, 82.08.050, and 82.08.060. I know of no statute or rule of law which allows the parties to a retail sale to vary, by contract or otherwise, the statutory method of retail sales tax collections. The majority opinion does not (nor does respondent) cite any such authority. Rule 171 certainly does not purport to vary the statutory method of tax collection and payment. It merely elaborates on a specific incidence of retail sales tax.

Contrary to the statement in the majority opinion, the prohibition against the exaction of a sales tax from the city on the items in category "B" is not that the state cannot request "payment a second time." That transaction or event, as between the contractor and the city, has specifically been excluded by the legislature from its definition of a sale at retail. This being so, there is no "subject" upon which the tax can be imposed.

In my opinion, appellant proved his cause of action, and

the trial court erred in failing to enter judgment against respondent in accordance with the prayer of the complaint. The judgment of the trial court should be reversed, and the cause remanded with instructions to enter judgment for appellant.

January 13, 1956. Petition for rehearing denied.