[No. 382-2.    Division Two.    January 6, 1972.]

MORRISON-KNUDSEN COMPANY, INC., *et al.*, *Respondents and Cross-appellants*, v. THE DEPARTMENT OF REVENUE, *Respondent*, THE DEPARTMENT OF HIGHWAYS, *Appellant.*

*Slade Gorton, Attorney General,* and *Kenneth R. Ahlf, Special Assistant,* for appellant.

*Seth W. Morrison* (of *DeGarmo, Leedy, Oles & Morrison*), for respondents and cross-appellants.

*Slade Gorton, Attorney General, Timothy R. Malone, Assistant,* and *James A. Furber, Special Assistant,* for respondent.

PEARSON, J.—This appeal raises a question of the proper application of the retail sales tax (RCW 82.04.050) to certain manufactured products furnished in connection with a state highway construction project.

Three separate parties are involved—the Washington State Department of Highways as appellant, the Washington State Department of Revenue as respondent, and Morrison-Knudsen Company as respondents and cross-appellants (hereafter Morrison).

In 1957 Morrison contracted with the Department of Highways to construct the present Hood Canal Floating Bridge. A significant portion of the project required the manufacture of large, reinforced concrete pontoons at Morrison's Seattle drydock. When completed, the pontoons were floated and stored at Seattle or Port Gamble and finally towed to the bridge site for installation. In the fall of 1959, with the bridge approximately one-half completed, a storm severely damaged the structure. This necessitated revision of the plans and specifications, so that the bridge could better withstand the elements. As Morrison and appellant could not agree on new terms, new bids were called for and the remainder of the construction project was awarded to Yuba Consolidated Industries, Inc. However, pursuant to an agreement on October 26, 1960,[1] Morrison

---

[1] A pertinent provision of the agreement stated: "It is understood and agreed that CONTRACTOR's remaining responsibility to STATE under THE CONTRACT is to complete the construction, at CONTRACTOR's Seattle drydock, of pontoons . . . J, K, N and O, to be delivered to STATE at CONTRACTOR's Seattle drydock on or before April 1, 1961, to the same state of completion as the pontoons which are presently moored at Port Gamble Bay, less deletions referred to in Exhibit "C" attached hereto, all in accordance with THE CONTRACT, including without limitation the provisions pertaining to liquidated damages for non-performance prior to revised completion time. STATE acknowledges it has no claim, and

completed manufacture of the four remaining pontoons, J, K, N, and O. When the pontoons were finished, the appellant took possession of them at Morrison's outfitting dock and authorized Yuba to tow them to the installation site. Some additional materials Morrison supplied were transported to the installation site on the completed pontoons.

The Department of Revenue[2] made its initial tax audit in 1959, covering the period from December, 1957 to September 30, 1959. Morrison was assessed business and occupation taxes for its manufacturing activities and use taxes for using the pontoons it had manufactured in the bridge construction. This audit was challenged by Morrison, but it was subsequently affirmed by the Supreme Court in *Morrison-Knudsen Co. v. State*, 64 Wn.2d 86, 390 P.2d 712 (1964). After the project was completed, the Department of Revenue made another tax audit covering the period from October 1, 1959 to September 30, 1964, which audit was consistent with the first, assessing a business and occupation tax and a use tax against Morrison. Exception was taken by Morrison, which resulted in an amended assessment on September 16, 1965, reclassifying the manufacture and delivery of pontoons J, K, N, and O as a retail sale (with Morrison as seller and appellant as buyer), on which a tax of $147,444.88 was due.

Both appellant and Morrison protested the amended assessment, and after the Department of Revenue confirmed it and assessed audit interest, the matter proceeded to the superior court. As the appellant had not yet paid the tax assessment, Morrison was compelled to pay the amount to have standing in the superior court. The results of the trial were as follows. (1) The manufacture of pontoons J, K, N, and O was deemed a retail sale, for which a tax of $147,444.88 was due. (2) Appellant, as buyer, owed that

agrees it will not assert any claim, against CONTRACTOR or CONTRACTOR'S sureties, arising out of CONTRACTOR'S acts or omissions in connection with THE CONTRACT prior to this date or the work heretofore performed by the CONTRACTOR."

[2] At that time, the Department of Revenue was called the State Tax Commission.

amount to Morrison, who had already paid the tax. (3) Morrison owed $66,116.60 in audit interest to the Department of Revenue ($68,956.69 minus a $2,840.09 stipulated credit) and the appellant owed the $68,956.69 audit interest to Morrison. (4) Interest to Morrison from appellant on the amount Morrison was compelled to pay to have court standing was denied. (Morrison is appealing that denial.)

Three primary issues are presented to this court on appeal. First, was the manufacture and delivery of the four remaining pontoons a retail sale, as contemplated by RCW 82.04.050? Secondly, was it proper to assess the audit interest against the appellant, Department of Highways? Thirdly, should Morrison have been awarded interest on the sales tax amount it was required to pay on December 11, 1968, in order to have standing in the superior court?

The construction and delivery of pontoons J, K, N, and O to the Department of Highways was a retail sale. We cannot accept respondent's claim that the tax debt from the buyer, appellant Department of Highways, to the Department of Revenue was merged because both are agencies of the state. RCW 82.08.010(3) specifically includes "the state, its departments and institutions and all political subdivisions thereof, . . ." in the definition of "buyer" for retail sales tax purposes. RCW 82.04.050 begins: " 'Sale at retail' or 'retail sale' means every sale of tangible personal property (including articles produced, fabricated, or imprinted) . . ."

The statute clearly contemplates the inclusion of finished products within the definition and not just raw materials. The completed pontoons were items of tangible personal property.

Appellant argues that the following exception to a retail sale within RCW 82.04.050 is applicable:

> The term [retail sale] shall not include the sale of or charge made for labor and services rendered in respect to the building, repairing, or improving of any publicly owned street, place, road, highway, bridge, or trestle

which is used or to be used primarily for foot or vehicular traffic, . . .[3]

█ This is commonly referred to as the public road contractor exception to a retail sale. To analyze this contention, particular attention must be given to the facts of this case. Originally, Morrison constructed the pontoons, floated and stored them, and finally towed the pontoons to the construction site for installation. It was for this activity that a use tax, rather than a sales tax, was assessed and subsequently affirmed in *Morrison-Knudsen Co. v. State, supra.* However, after the actual bridge construction was undertaken by Yuba, Morrison agreed only to manufacture the four remaining pontoons. Whether that agreement is considered a new contract or a modification of the original, it cannot be doubted Morrison's relationship to the project was substantially altered. (*See* footnote 1.) Instead of remaining a road contractor, Morrison became exclusively a supplier to appellant, and to Yuba, the new road contractor. Not only was a use tax no longer applicable, but a retail sales tax became proper just as if Yuba had obtained the pontoons from an independent supplier of its own.

*Pierce County v. State,* 66 Wn.2d 728, 404 P.2d 1002 (1965), relied upon by appellant, is not applicable here. There, charges for crushing and stockpiling rock obtained from the county's own quarry for county road construction were held not to be a retail sale by virtue of the public road contractor exception. That "labor and services" were performed by a road contractor cannot be doubted in that case. There was no sale of tangible personal property involved. Morrison, however, after the October 26, 1960 agreement, assumed an entirely different relationship to the Department of Highways than it had under the original contract. The construction of pontoons J, K, N, and O and their delivery to the state clearly became a retail sale

---

[3]This section was amended by the Laws of 1971, Ex. Ses., ch. 299, so as to make the retail sales tax applicable to labor and services performed on state highway projects. The exemption was continued, however, for county and city or other political subdivision road projects.

under RCW 82.04.050 and *properly taxed* as such, pursuant to RCW 82.08.020.

█ It is also our view that the trial court was correct in allowing Morrison a judgment against the Department of Highways for audit interest in the sum of $68,956.69. Audit interest is assessible against a delinquent "taxpayer" by virtue of RCW 82.32.050.[4] This statute, however, fails to specify whether or not a seller, against whom audit interest has been assessed, may recover such penalties from the buyer. Therefore, we must look to other provisions of the act to ascertain the legislative intent.

"Taxpayer" is defined in RCW 82.02.010(3) so as to include both the buyer and the seller. That definition is made applicable to all provisions of the retail sales act. *See* RCW 82.32.020.

Furthermore, the statutory scheme, as evidenced by RCW 82.08.050,[5] is to impose upon the seller the duty to

---

[4]RCW 82.32.050 was amended July 1, 1965 and also July 1, 1971 as to portions of the statute inapplicable to this case. *See United States Steel Corp. v. State,* 65 Wn.2d 385, 397 P.2d 440 (1964).

[5]RCW 82.08.050 provides: "The tax hereby imposed shall be paid by the buyer to the seller, and each seller shall collect from the buyer the full amount of the tax payable in respect to each taxable sale in accordance with the schedule of collections adopted by the tax commission pursuant to the provisions of RCW 82.08.060. The tax required by this chapter, to be collected by the seller, shall be deemed to be held in trust by the seller until paid to the commission, and any seller who appropriates or converts the tax collected to his own use or to any use other than the payment of the tax to the extent that the money required to be collected is not available for payment on the due date as prescribed in this chapter shall be guilty of a misdemeanor.

"In case any seller fails to collect the tax herein imposed or having collected the tax, fails to pay it to the commission in the manner prescribed by this chapter, whether such failure is the result of his own acts or the result of acts or conditions beyond his control, he shall, nevertheless, be personally liable to the state for the amount of the tax.

"The amount of tax, until paid by the buyer to the seller or to the commission, shall constitute a debt from the buyer to the seller and any seller who fails or refuses to collect the tax as required with intent to violate the provisions of this chapter or to gain some advantage or benefit, either direct or indirect, and any buyer who refuses to pay any tax due under this chapter shall be guilty of a misdemeanor.

"Where a buyer has failed to pay to the seller the tax imposed by

*collect* and *remit* the tax and to impose upon the buyer the duty to *pay* the tax. *See Kaeser v. Everett,* 47 Wn.2d 666, 289 P.2d 343 (1955). The seller can be made to remit the tax whether or not he has collected it and whether or not his failure to collect is attributable to his own fault. *White v. State,* 49 Wn.2d 716, 306 P.2d 230 (1957). However, it is clear that the buyer is primarily liable for payment of the tax. *Murray v. State,* 62 Wn.2d 619, 384 P.2d 337 (1963).

Any doubt that a buyer can be treated as a "taxpayer" for the purpose of RCW 82.32.050 is resolved by a careful reading of the language between the semicolons in the fourth paragraph of RCW 82.08.050, dealing with the buyer's liability. It states: "and all of the provisions of chapter 82.32, including those relative to interest and penalties, shall apply in addition; . . ."

In the instant case, Morrison, as seller, had failed to collect the tax imposed and the buyer, appellant Department of Highways, had failed to pay the same. Under the authority of the second and fourth paragraphs of RCW 82 08.050, and under RCW 82.32.050, either buyer or seller could be forced to pay both the tax and the audit interest. The Department of Revenue, in this case, selected the seller, Morrison. Nevertheless, the ultimate responsibility for payment cannot rest there. As stated previously, the appel'ant, as buyer, is ultimately responsible for the tax, and until paid, this amount constitutes a debt from buyer to seller. (RCW 82.08.050.) For the same reason, we feel the audit interest must constitute a debt from buyer to

---

this chapter and the seller has not paid the amount of the tax to the commission, the commission may, in its discretion, proceed directly against the buyer for collection of the tax, in which case a penalty of ten percent may be added to the amount of the tax for failure of the buyer to pay the same to the seller, regardless of when the tax may be collected by the commission; and all of the provisions of chapter 82.32, including those relative to interest and penalties, shall apply in addition; and, for the sole purpose of applying the various provisions of chapter 82.32, the fifteenth day of the month following the bimonthly tax period in which the purchase was made shall be considered as the due date of the tax." (This statute was amended effective June 1, 1965 and again effective July 1, 1971, in a manner not affecting this appeal.)

seller where either (1) the seller has unsuccessfully at-
tempted to collect the tax from the buyer, or (2) the buyer
has notice of the tax assessment and its responsibility to
pay it. Both Morrison and appellant were contesting the
assessment of a retail sales tax at both the administrative
hearing and in the superior court. The buyer was, then,
fully aware a sales tax had been assessed and should reim-
burse seller for both tax and audit interest. If this were not
the law, a buyer, as in this case, could avoid its tax respon-
sibility for a considerable period of time and the seller, who
is merely a collector, could be burdened with a substantial
penalty interest. Not only would it be unjust to let the
buyer escape payment of audit interest in this case, but, we
feel it would be unconstitutional, as an improper delegation
of legislative authority, for the Department of Revenue
could then choose which party it wished to charge with the
audit interest, and that charge would be final. *See United
States Steel Corp. v. State*, 65 Wn.2d 385, 397 P.2d 440
(1964).[6]

■ Charging audit interest against the state cannot be
considered unconstitutional under *Fosbre v. State*, 76
Wn.2d 255, 456 P.2d 335 (1969). That case was based upon
an interpretation of the "Tort Claims Act." Here, the state,
by statute, can be a "buyer" (RCW 82.08.010(3)), and con-
sequently a taxpayer (RCW 82.02.010(3)) and is, therefore,
subject to an audit interest (RCW 82.32.050).

We now reach Morrison's cross-appeal from the refusal
of the trial court to allow interest on the sum of $147,444.88
which Morrison was required to pay in order to pursue its
remedy against the Department of Highways and appeal
the tax assessment.

■ RCW 82.32.150 denies a taxpayer access to the
courts to protest a tax assessment unless the assessment is
paid to the Department of Revenue. This statute prompted

---

[6]In that case, an earlier version of RCW 82.32.050 gave the Tax
Commission the discretion of whether or not to charge any interest at
all, as well as in what amount, not to exceed 6 per cent. That statute
was held to be an unconstitutional delegation of legislative power.

the Department of Revenue to challenge the jurisdiction of the court to hear the appeal until Morrison paid the assessment. The Department of Highways, with knowledge of its potential liability as buyer, did not pay the assessment, nor did it offer to do so. In failing to advance this payment, the State of Washington, wearing the hat of its Department of Highways, obtained for the State of Washington, wearing the hat of its Department of Revenue, over 3 years of the use of a substantial sum of Morrison's money. During that 3 years, the Department of Highways was challenging the Department of Revenue's determination that its purchase of the pontoons was a retail sale.

The Department of Revenue, on the other hand, made a correct determination that the Department of Highways was a retail buyer and, consequently, primarily liable for payment of the tax. At this point, when the assessment was amended, the Department of Revenue had statutory authority (RCW 82.08.050) to collect the assessment from either the *seller* or the *buyer*. Its election to proceed against Morrison instead of against its sister agency (who bore primary tax liability) was the direct cause of the loss to Morrison of the use of $147,444.88 for more than 3 years. If the Department of Revenue believed its ruling to be correct, there appears to us to have been no logical reason for the exercise of its discretion to proceed against the seller rather than the buyer.

We then arrive at the contention of the State of Washington, through its Department of Highways, that Morrison is not entitled to interest on its money because neither the taxing statute nor the contract provided for the payment of interest under these circumstances. *Fosbre v. State, supra.* The posture of this argument is no less than unconscionable. It is our view that while the legislature did not specifically provide for interest under these unique circumstances, a reasonable interpretation of the taxing statute does not permit us to condone the whipsawing engaged in by two state agencies at the expense of one of its taxpayers. If, under RCW 82.08.050, the buyer becomes the debtor of

the seller, and the seller is forced to pay the retail tax, then we hold that the buyer is also indebted to the seller for the use of the seller's money during such time as the nonpaying buyer is unsuccessfully challenging his tax liability.

We do not consider *Fosbre v. State, supra* applicable, since a reasonable construction of RCW 82.08.050 encompasses a debtor-creditor relationship broad enough to include the interest claim under these unique circumstances.

Accordingly, the cross-appeal should be allowed against the Department of Highways and interest at 6 per cent per annum on Morrison's tax payment should be allowed from the date of payment to the date the basic judgment is satisfied.

Finally, there is no merit to appellant's contention that it should receive a $39,810 credit, representing the amount Morrison was credited for the sales tax it paid on raw materials. Section 7.01B of the "Standard Specifications for Road and Bridge Construction 1957," incorporated into the contract, merely *advises* the contractor to include all sales tax paid by him on materials, equipment, and supplies in its bid price. There is no requirement that these sales taxes be included. There was substantial evidence for the trial court's finding of fact that Morrison paid $39,810 in sales tax for its raw materials, this amount was not included in its bid, and consequently, the later credit for this amount was no windfall to Morrison nor detriment to appellant.

Affirmed as modified.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied June 12, 1972.