[No. 10767-8-II.   Division Two.   October 23, 1987.]

GTE COMMUNICATION SYSTEMS CORPORATION, ET AL, *Appellants,* v. THE DEPARTMENT OF REVENUE, *Respondent.*

*John J. O'Donnell, James S. Gary,* and *Karr, Tuttle, Koch, Campbell, Mawer, Morrow & Sax,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Gray, Assistant,* for respondent.

WORSWICK, J.—Two issues are presented: (1) whether GTE Communication Systems Corporation is entitled to have a sales tax refund offset against its underpayment of general business taxes, so that interest on its underpayment would be calculated only on the net amount after offset; and (2) whether statutes prescribing different rates of interest for tax refunds and tax underpayments are consti-

tutional. We hold that GTE is not entitled to an offset, and that the statutes are constitutional.

GTE provided custom–designed computer software to General Telephone Company of the Northwest, Inc., collecting and remitting sales tax on the price. GTE later decided that no sales tax had been due, because the transaction was not a sale of tangible personal property but constituted the furnishing of professional services. The Department of Revenue disputed this at first, but capitulated after GTE brought a lawsuit and stipulated that GTE was entitled to a refund, assuming that it had paid, or would pay, a corresponding refund to its customer. GTE had underpaid other general business taxes for which it was directly responsible; the amount exceeded the sales tax refund. The stipulation said nothing about offsetting the sales tax refund against this delinquency and also was silent as to interest.

RCW 82.32.050 provides for 9 percent interest on delinquent taxes; RCW 82.32.060 provides for 3 percent on refunds. The Department did not offset the sales tax refund against GTE's delinquent taxes, but charged 9 percent on the entire amount of the delinquency and allowed 3 percent on the amount of the sales tax refund. Thus, GTE received nearly $69,000 less than it expected, so it reactivated its lawsuit. GTE now appeals the trial court's order approving the Department's calculations. We affirm.

Although GTE advances several arguments to support the contention that it was entitled to have the sales tax refund offset against its delinquent taxes before interest was calculated,[1] its basic position is that because the Department agreed that GTE, as an entity, was to receive the sales tax refund, the Department was bound to follow

[1]GTE's heavy reliance on the stipulation is misplaced. The stipulation says nothing about an offset or interest. GTE's reliance on *Puget Sound Power & Light Co. v. State,* 70 Wn.2d 493, 424 P.2d 634 (1967) is also misplaced, for all taxes involved in the calculations there were the direct responsibility of the taxpayer. We also find no support for GTE's position in Excise Tax Bulletin 229.32-.229 (1966).

its "normal procedure" and calculate delinquent tax interest only on the net amount due the State after the offset. Reduced even to simpler terms, GTE claims that the sales tax refund was its money, and the State had the use of the money while GTE's other taxes were delinquent. Therefore, its delinquency was reduced, and its interest liability should only be calculated on the net amount. The Department rejoins that GTE's delinquency must be measured by the full amount of the underpayment of taxes for which it was directly responsible because the sales tax money came from GTE's customer, and GTE was only a collecting trustee. Thus, GTE should not be allowed an offset of its customer's money. We agree with the Department.

■ The short but complete answer to GTE's contention is found in RCW 82.08.050, under which the buyer is made liable for sales taxes and the seller only is required, as a trustee, to collect and remit sales taxes to the State. *See Kaeser v. Everett*, 47 Wn.2d 666, 289 P.2d 343 (1955); *Urban Constr. Co. v. Seattle Urban League*, 12 Wn. App. 935, 533 P.2d 392, *review denied*, 85 Wn.2d 1018 (1975). Contrary to GTE's assertion, the buyer's liability never shifts, for even if the State utilizes its power to enforce the amount of the tax against the seller, when the seller fails to collect the tax, under the statute the buyer becomes liable to the seller, and ultimate liability remains on the buyer. *Morrison–Knudsen Co. v. Department of Rev.*, 6 Wn. App. 306, 493 P.2d 802 (1972). If the seller is a trustee for collection of the tax, it follows that it is a trustee of the refund as well.[2] It cannot use these trust funds to reduce the impact of its own tax liability.

GTE also contends that the disparity in interest rates between RCW 82.32.050 and RCW 82.32.060 violates the

[2]This answers GTE's argument that because it refunded the tax to its customer, the refund amount became its money. The record is not clear whether—or if—such a refund was made and, if so, when. In view of the statutorily fixed liability of the buyer for the tax and responsibility of the seller for collection, the Department need not concern itself with financial arrangements between a tax–collecting seller and a tax–paying buyer.

equal protection guaranties of Const. art. 1, § 12 and U.S. Const. amend. 14. We disagree.

■■ GTE has no fundamental right to a given interest rate either as to refunds or delinquencies, nor is a suspect class—such as race, nationality or alienage—involved. Therefore, the minimum scrutiny analysis applies to GTE's constitutional challenge. *Bellevue Sch. Dist. 405 v. Brazier Constr. Co.*, 100 Wn.2d 776, 675 P.2d 232, *aff'd on rehearing*, 103 Wn.2d 111, 691 P.2d 178 (1984). Our inquiry is whether (1) the legislation applies alike to all members within the designated class; (2) there are reasonable grounds to distinguish between those within and those without the class; and (3) the classification has a rational relationship to the purpose of the legislation. The statute is presumed constitutional and GTE must overcome a heavy burden to persuade us otherwise. *Bellevue Sch. Dist. 405,* 100 Wn.2d at 781–82. Plainly, each statute applies alike to all members of the designated class, and obviously it is reasonable to distinguish between those within and without each class. The remaining question is whether the classifications bear a rational relationship to the purposes of the legislation. We hold that they do.

The rationale of the differing rates can be summed up in one word: incentive. One faced with a high interest rate on delinquent taxes is given incentive not to be delinquent in the first place and, if delinquent, to abbreviate the period of interest by prompt payment. One faced with low interest on refunds is similarly encouraged: to be accurate in making payments in the first instance, and promptly to seek a refund should there be an overpayment. Thus, the classifications of these statutes bear a rational relationship to the orderly and efficient administration of the tax laws, certainly among the purposes of the legislation.

Affirmed.

ALEXANDER, A.C.J., and PETRICH, J., concur.