UNITED STATES v. BROWN, Clerk of Circuit Court of Flagler County, Fla.

Civ. No. 375J.

District Court, S. D. Florida, Jacksonville Division.

Nov. 5, 1941.

Herbert S. Phillips, Dist. Atty., of Tampa, Fla., and Damon G. Yerkes, Asst. Dist. Atty., of Jacksonville, Fla., for plaintiff.

J. Tom Watson, Atty. Gen., Lawrence A. Truett, Asst. Atty. Gen., and H. T. Cook, of Bunnell, Fla., for defendant.

STRUM, District Judge.

The fundamental question here presented is whether or not lands owned in fee simple by a Regional Agricultural Credit Corporation, created pursuant to Section 201 (e) of the Act of July 21, 1932, 12 U.S.C.A. § 1148, are taxable by the State of Florida.

Regional Corporation acquired the fee-simple title to the lands in question in a foreclosure proceeding on October 5, 1938, and now wishes to redeem the lands from a tax certificate issued by the State of Florida on August 2, 1937 to an individual purchaser, who has now applied for the issuance of a tax deed. Regional Corporation has tendered to the proper State official a sum sufficient to pay the face of such certificate, together with omitted taxes for the years 1937 and 1938, but declines to pay, as required by Florida law, omitted taxes for the years 1939 and 1940, on the ground that title to the lands during those years was in Regional Corporation, an agency of the United States, and the lands therefore immune from taxation. The State officials decline to cancel the tax certificate unless omitted 1939 and 1940 taxes are paid, and this creates the issue between the parties. The United States seeks to enjoin the defendant clerk from issuing a tax deed based on said certificate.

The Act of July 21, 1932, known as the Emergency Relief and Construction Act of 1932, under which Regional Corporation was created, is a comprehensive statute which enlarges and extends the powers of Reconstruction Finance Corporation, established shortly prior thereto by the Act of January 22, 1932. Section 201 (e) of the Act of July 21, 1932, 12 U.S.C.A. § 1148, authorizes RFC to create Regional Agricultural Credit Corporations in any of the twelve Federal Land Bank Districts where RFC may deem the same desirable, the capital of which Regional Corporations shall be wholly subscribed by RFC, and paid out of the amount allocated to the Secretary of Agriculture under 15 U.S.C.A. § 602. The function of these Regional Corporations is to make loans to farmers and stockmen for agricultural purposes. The statute authorizing their creation, 12 U.S.C.A. § 1148, is silent as to whether they shall be immune from taxation.

The statute is also silent as to the immunity of these corporations from suit. Yet the Supreme Court has held that they are sueable even in a tort action to recover for alleged negligence in the care of livestock entrusted to them. Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784. See also Casper v. Regional A. C. Corp., 202 Minn. 433, 278 N.W. 896;

Astoria Marine Iron Works v. United States Shipping Board E. F. Corp., 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762, and the comprehensive note following the Keifer case, 83 L. Ed. 794.

■■ Whether or not these Regional Corporations shall enjoy sovereign immunity from taxation is wholly a question of Congressional intent. They are purely commercial corporations exercising no sovereign function. In the absence of statutory provision, there is no reason why they should be exempted from taxation, especially in view of Congressional policy concerning this type of corporation, evidenced by many statutory provisions expressly subjecting the real property of similar corporations to taxation.[1]

■ The mere fact that the United States owns all the capital stock of these corporations is not alone sufficient to endow them with sovereign immunity, nor do they acquire such immunity merely because they are the medium through which the Government carries out certain proprietary activities. Note, 83 L.Ed. 799 et seq.

In Bank of United States v. Planters' Bank, 9 Wheat. 904, 907, 6 L.Ed. 244, the Supreme Court said: "It is, we think, a sound principle, that when a government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted."

■ When a corporation is created for commercial as distinguished from Governmental purposes, it is ordinarily implied in the absence of statutory provisions to the contrary, that such corporation shall have all the requisites and responsibilities of corporate existence, even though the United States owns all the stock. Such a corporation is an entity separate from the United States. United States v. Strang, 254 U.S. 491, 41 S.Ct. 165, 65 L. Ed. 368.

■■ In January, 1932 Congress had created RFC through which to carry out certain proprietary and commercial activities. That statute, 15 U.S.C.A. § 610, specifically provides that real property owned by RFC is subject to taxation to the same extent as other property is taxable, though certain personal property of RFC is exempt. Six months later, Congress enlarged and extended RFC activities, and amongst other things authorized RFC to organize these Regional Corporations as a means through which the enlarged activities of RFC should be carried on, RFC being the sole creator of these Regionals. As said in the Keifer case [306 U.S. 381, 59 S.Ct. 520, 83 L.Ed. 784]: "Congress naturally assumed that the general corporate powers to which it had given particularity in the original statute establishing Reconstruction would flow automatically to the Regionals from the source of their being. * * * Congress had a right to assume that the characteristic energies for corporate enterprise with which a few months previously it had endowed Reconstruction would now radiate through Reconstruction to Regional." It is not to be inferred merely from the silence of the statute that Congress intended to grant tax immunity to Regional, while expressly withholding such immunity from Regional's progenitor, RFC.

■ The statute being silent, the same reasons which deny Regional's immunity from suit, impel the same conclusion with respect to taxation of its real property. Both are sovereign immunities of like quality. No doubt Congress might grant one and withhold the other. But no evidence of such Congressional intent is to be found in the controlling statute. It follows that these lands were subject to taxation for the years 1939 and 1940.

■ There is nothing in Executive Order No. 6084, dated March 27, 1933, 7 U.S.C.A. page 204, Id. 12 U.S.C.A. page 793, which has the effect of creating for

---

[1] See for example, 12 U.S.C.A. § 1463 (c), providing that *real* property of Home Owners Loan Corp. shall be taxable, but exempting it from other taxes; 15 U.S. C.A. § 610 making similar provisions as to Reconstruction Finance Corp.; and 12 U.S.C.A. §§ 931 and 933 as to Federal and Joint Stock Loan Banks. Cf. Federal Land Bank v. Crosland, 261 U.S. 374, 43 S.Ct. 385, 67 L.Ed. 703, 29 A.L. R. 1; Pittman v. Home Owners' Loan Corp., 308 U.S. 21, 60 S.Ct. 15, 84 L.Ed. 11, 124 A.L.R. 1263.

these Regionals an immunity from taxation.

The question of jurisdiction under 28 U.S.C.A. § 41 (1), as amended, last six lines, is pretermitted, as in any event the complaint must be dismissed.

Injunction denied.