[Nos. 36226, 36227, 36228, 36229. En Banc. August 1, 1963.]

IAN MURRAY et al., *Appellants*, v. THE STATE OF WASHINGTON *et al., Respondents.*

INLAND EMPIRE BUILDERS, INC. et al., *Appellants*, v. THE STATE OF WASHINGTON *et al., Respondents.*

HEBB & NARODICK CONSTRUCTION CO., INC. et al., *Appellants*, v. THE STATE OF WASHINGTON *et al., Respondents.*

HEBB & NARODICK CONSTRUCTION CO., INC., *Appellant*, v. THE STATE OF WASHINGTON *et al., Respondents.*\*

\*Reported in 384 P. (2d) 337.

*Bogle, Bogle & Gates, Edward G. Dobrin,* and *Richard S. Sprague,* for appellants Murray *et al.*

*Allen, DeGarmo & Leedy* and *Seth W. Morrison,* for appellants Inland Empire Builders, Inc. *et al.*

*Casey & Pruzan,* by *Carl Pruzan,* for appellants Hebb & Narodick Construction Co., Inc. *et al.*

*The Attorney General, John W. Riley, Chief Assistant,* and *Timothy R. Malone, Assistant,* for respondents.

OTT, C. J.—This appeal is a consolidation of four actions brought by several contractors to recover a retail sales tax paid under protest, and to enjoin the State Tax Commission from assessing the sales tax in connection with the construction of Capehart Act housing at military installations in Washington.

From adverse judgments, the contractors appeal.

The facts upon which these appeals are predicated are not in dispute. The legal issue involved is whether the transactions, pursuant to which the military housing was constructed, are shielded from state taxation by the sovereign immunity granted to the United States government by the federal and state constitutions.

Each of the appellants was awarded contracts under the provisions of the Capehart Act (69 Stat. 651-654 as amended). Since the contract provisions are identical, we will refer only to the material portions of the documents in cause No. 36226. The procedure for the execution of a contract under the act, in so far as here material, may be stated as follows:

The Secretary of Defense, after determining a need for military housing, issues an invitation for bids. The contractor submitting the lowest acceptable bid receives a

"Letter of Acceptability" from the Secretary. The letter requires the successful bidder to establish a private "mortgagor-builder" corporation under the laws of the state of Delaware, and to qualify it to do business in the state involved. The contractor furnishes the corporation with $1,000 for capital stock, purchases all of it, and elects its officers and directors. The United States government executes to the corporation a 55-year lease of the real estate upon which the housing is to be constructed. The corporation is to obtain private financing by giving a mortgage on its leasehold, and obtain a commitment from the Federal Housing Administration to insure its mortgage loan. The mortgage loan is in the amount of the contractor's bid.

The "Letter of Acceptability" prescribes the "initial closing" procedure, which entails the execution of the following documents:

(1) The 55-year lease between the United States and the corporation for a consideration of $1,000, paid by the corporation to the United States government. The corporation agrees, during the period of construction, to maintain insurance and to save the United States government harmless from any laws, ordinances, and regulations applicable to the leased premises, with regard to construction, sanitation, licenses or permits to do business.

(2) The corporation executes a note, secured by a real and chattel mortgage on its real-estate leasehold, to the private lender.

(3) The corporation, contractor, and the United States execute a housing contract which provides that all construction is to be inspected and supervised by the United States; that progress payments are to be made by the corporation from the mortgage loan, upon request of the contractor and approval of the United States, and that, upon full payment, title to the housing units vests in the United States, subject to contractor liability for latent defects. The contract further provides that the contractor shall act as agent for the corporation, guarantee its performance, and furnish a performance bond to the corporation and the mortgagee.

(4) An irrevocable escrow agreement is executed which provides that the resignations of the officers and directors of the corporation, and the stock certificates of the corporation, endorsed in blank, are to be placed in escrow, with instructions to the escrow holder to deliver these documents to the United States upon completion and acceptance of the project.

(5) The United States executes a written guarantee to pay the mortgage installment payments to the private mortgagee and/or the Federal Housing Administration, the insurer.

The provisions of the Capehart Act were fully complied with by the contractors involved in these appeals.

Appellants' assignments of error raise two principal issues: First, the appellant contractors contend that, under Washington law, the consumer of the housing project is the party liable for payment of the sales tax, and that, as a result of the statutory method for the construction of Capehart housing, the United States is the consumer and, therefore, its constitutional immunity from state taxation applies. Secondly, appellants contend that the mortgagor-builder corporation is an agency of the United States and, as such, is immune from state tax.

The function of interpreting state statutes to determine who is liable for payment of a sales tax is reserved to the state courts involved. *Alabama v. King & Boozer*, 314 U. S. 1, 86 L. Ed. 3, 62 S. Ct. 43, 140 A.L.R. 615 (1941); *Kern-Limerick, Inc. v. Scurlock*, 347 U. S. 110, 98 L Ed. 546, 74 S. Ct. 403 (1954).

RCW 82.08.020 provides that " . . . there shall be collected a tax on each retail sale in this state . . ." A retail sale is defined in RCW 82.04.050 as including

" . . . the sale of or charge made for tangible personal property consumed and/or for labor and services rendered in respect to the following: . . . (b) the constructing . . . of new or existing buildings or other structures under, upon, or above real property *of or for consumers,* . . . " (Italics ours.)

A consumer is defined in RCW 82.04.190 (4) as "Any person who is an *owner, lessee or has the right of possession* to or an easement in real or personal property . . ." (Italics ours.)

RCW 82.08.050 provides in part:

"The tax hereby imposed shall be paid by the *buyer* to the seller, and each *seller* shall collect from the *buyer* the full amount of the tax payable in respect to each taxable sale . . .

"In case any seller fails to collect the tax herein imposed . . . he shall . . . be personally liable to the state for the amount of the tax." (Italics ours.)

Appellants concede that a retail sale, as defined in RCW 82.04.050, did occur, but contend that the consumer defined in RCW 82.04.190, and the buyer denominated in RCW 82.08.050 are synonymous, and that the United States government is the consumer and taxable party because it becomes the owner of the housing units upon their completion and acceptance.

██ With this contention, we do not agree. One of the purposes of RCW 82.04.050 is to define the event that gives rise to a taxable transaction, which is the rendition of labor and services in the construction of new buildings upon real property of or for consumers. RCW 82.04.190 establishes the means by which the consumer is identified. These sections do not designate the party liable for payment of the tax in any given transaction. RCW 82.08.050 provides that the retail sales tax shall be borne by the buyer, who is primarily liable for payment of the tax. *Kaeser v. Everett*, 47 Wn. (2d) 666, 289 P. (2d) 343 (1955).

We must therefore determine who is the buyer under the facts of the instant case. In this regard, appellants contend that the United States is the buyer because it bears the economic burden of paying for the military housing, by virtue of its guarantee of the mortgage obligation.

In *Alabama v. King & Boozer, supra,* the state of Alabama, pursuant to a statute which imposed the sales tax upon the purchaser, levied a sales tax upon the sale of lumber to a contractor who was constructing installations for

the Army.. It was there contended that the sales tax could not be collected from the contractor for the reason that the United States was the purchaser, within the meaning of the Alabama statute. In answering this contention, the Supreme Court of the United States held:

" . . . The taxing statute, as the Alabama courts have held, makes the 'purchaser' liable for the tax to the seller, who is required 'to add to the sales price' the amount of the tax and collect it when the sales price is collected, whether the sale is for cash or on credit. Who, in any particular transaction like the present, is a 'purchaser' within the meaning of the statute, is a question of state law on which only the Supreme Court of Alabama can speak with final authority. *But it seems plain, as the Government concedes and as we assume for present purposes, that under the provisions of the statute the purchaser of tangible goods who is subjected to the tax measured by the sales price, is the person who orders and pays for them when the sale is for cash or who is legally obligated to pay for them if the sale is on credit. . . .*" (Italics ours.)

The court concluded:

"We cannot say that the contractors were not, or that the Government was, bound to pay the purchase price, or that the contractors were not the purchasers on whom the statute lays the tax. The added circumstance that they were bound by their contract to furnish the purchased material to the Government and entitled to be reimbursed by it for the cost, including the tax, no more results in an infringement of the Government immunity than did the tax laid upon the contractor's gross receipts from the Government in *James v. Dravo Contracting Co., supra* [302 U. S. 134]."

 Applying this rule, the buyer is the person who is *legally obligated* to pay the seller in any transaction. The housing contract executed by the parties provided that "The mortgagor-builder [corporation] shall pay the eligible-builder [contractor] for the performance of this Housing Contract, and all other obligations of the eligible builder herein, . . ." By the express terms of the contract, the corporation, and not the United States, was obligated to pay the appellant contractors; hence, the corporation was the buyer under the statute. Under the provisions of

the Capehart Act and the facts in the instant case, the United States government was not obligated to pay the seller. The fact that the ultimate economic burden of the tax may fall upon the United States does not vitiate a state tax on the transactions. *Alabama v. King & Boozer, supra*; *Kern-Limerick, Inc. v. Scurlcok, supra*; *United States v. Detroit*, 355 U. S. 466, 2 L. Ed (2d) 424, 78 S. Ct. 474 (1958); *E. I. Du Pont de Nemours & Co. v. State*, 44 Wn. (2d) 339, 267 P. (2d) 667 (1954).

Our conclusion in this regard is also supported by the following cases:

*United States v. Harrison & Grimshaw Constr. Co.*, 305 F. (2d) 363 (1962), involved the question of whether the provisions of the Miller Act applied to the performance bond given by the eligible builder under a Capehart Act contract. The court held (p. 368):

" . . . The projects are of a private nature until completion and assumption of control by the government. *The mortgagor-builder has a contract with a construction company to build the project. The constructor looks to the mortgagor-builder for payment for his work and owes to the mortgagor-builder the obligation to perform. . . .*" (Italics ours.)

In *In re S. S. Silberblatt, Inc. v. Tax Comm. of the State of New York*, 5 N. Y. (2d) 635, 159 N. E. (2d) 195, 186 N. Y. S. (2d) 646 (1959), it was said:

"Likewise, we must reject appellant's contention that the subject mortgages, as direct obligations to the United States, are immune from State or local taxation, as provided in section 3701 of the Revised Statutes of the United States (U. S. Code, tit. 31, § 742) which exempts 'Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States' since they are not 'of the same type as those specifically enumerated' in the statute (*Smith v. Davis*, 323 U. S. 111, 117). Under the arrangement authorized by the Enabling Act, it is clear that the device employed was designed to relieve the Government of its financially burdensome obligation to provide housing for its military personnel and at the same time avoid increasing the national debt. It did not pledge its credit in the usual sense, but merely guaran-

teed each 'periodic payment' based on a monthly average of $90 per family unit."

Congress, in its discretion, by enacting the Capehart law, chose to leave the hazards of construction, the purchasing of proper materials, and the furnishing of proper labor performance to private contractors and private lenders. It chose to guarantee only the payment to the private lender, after units acceptable to the government were erected upon the leased premises. We conclude, therefore, that the mortgagor-builder corporation was the party legally obligated to pay the contractor, and that it was the buyer denominated in RCW 82.08.050.

Is the mortgagor-builder corporation an agency of the United States?

Appellants contend that title to the units, when built in accordance with the contracts, vested in the United States; that the United States controlled and dictated the terms of the construction contracts, and that it guaranteed the mortgage obligation and ultimately gained ownership of all of the corporation's capital stock; hence, the corporation is a government agency.

In support of this contention, appellants rely on *Clallam Cy. v. United States*, 263 U. S. 341, 68 L. Ed. 328, 44 S. Ct. 121 (1923); *Green v. Eglin AFB Housing, Inc.*, 104 So. (2d) 463 (Fla. 1958); and *Knapp-Stiles, Inc. v. Michigan Department of Revenue*, CCH 2 Mich. Tax Cases ¶¶ 200-202 (1962).

The *Clallam County* case held that a corporation, organized pursuant to a World War I emergency act which authorized the Director of Aircraft Production to establish one or more state corporations to produce war materials, was an agency of the United States and, as such, its activities were exempt from state taxation. The case is not apropos. The Director of Aircraft Production was, by law, an agent of the government. In the instant case, the successful bidders were not authorized agents of the government. Furthermore, the facts in the cited case did not disclose any evidence of an intent to distinguish the corporate activities from those of the United States. In this regard, the court stated (p. 345): " . . . This is not like the

case of a corporation having its own purposes as well as those of the United States . . ."

In the *Green* case, the court stated (p. 467):

" ' . . . The question here is the extent of an *exemption* granted by *state statute*. Had the legislature intended to limit the exemption to that required by the Federal Constitution there would have been no occasion whatever to go further than to say "There shall also be exempted all sales made to the United States." But the legislature intended to grant a greater exemption and made that intent clear . . .' "

In *Knapp-Stiles, Inc. v. Michigan Department of Revenue, supra,* the court stated:

"At the outset, it may be noted that the question is *not* whether the State has the *power* to impose such tax upon contractors who are performing contracts with the United States.
" . . .
"Michigan has the power to impose such a tax. Has it done so? Or has it, by the language of the statute, exempted the sales here involved from the tax? . . ."

In the *Green* and *Knapp-Stiles* cases, the result was determined by interpreting a state exemption statute much broader than our own, for which reason the cases are distinguishable.

██ The mortgagor-builder corporate entity created for the purpose of constructing and financing Capehart housing serves a separate and distinct function from that of the United States. That such a corporation is not an agency of the United States is sustained by the following decisions:

In *In re S. S. Silberblatt, Inc., v. Tax Comm. of the State of New York, supra,* the New York Court of Appeals held that the mortgagor-builder corporation was subject to that state's mortgage recording tax, stating (p. 641):

"The appellant's contention that this petitioner and the five corporate mortgagors are instrumentalities of the Federal Government or its agencies and, as such, are exempt from State and local taxation, is without substance. . . . At the time of the execution, delivery and recording of these mortgages, each of the mortgagors was a private corporation, all of the capital stock of which was privately

owned. They were created for a commercial purpose for private profit, as distinguished from a governmental purpose. In the absence of statute to the contrary, it may not be assumed that a governmental function was involved. They possess all of the requisites and responsibilities of corporate existence and, as such, *are an entity separate and apart from the United States (United States v. Strang*, 254 U. S. 491) *and this is so, notwithstanding the fact that all of the capital stock of each corporation will ultimately be owned by the Federal Government (Sloan Shipyards v. United States Fleet Corp.*, 258 U. S. 549). . . ." (Italics ours.)

In *United States v. Ft. George G. Meade Defense Housing Corp. No. 1*, 186 F. Supp. 639 (1960), it was held that the leasehold interest acquired by the mortgagor-builder corporation from the United States was subject to the Maryland mechanics' lien law because

". . . the so-called Capehart Act contemplates leaving the entire arrangement for the financing and construction of Capehart housing projects in the hands of private enterprise until the point at which the government has secured the capital stock of the Housing Corporation . . ."

The reasoning in the following cases, although not arising from Capehart transactions, supports the view that the mortgagor-builder corporations are not agencies of the government.

In *E. I. Du Pont de Nemours & Co. v. State*, 44 Wn. (2d) 339, 267 P. (2d) 667 (1954), it was contended that the Du Pont Company was an agent or instrumentality of the United States in its operation of the Hanford Engineer Works. We held (pp. 349, 350):

". . . the fact that the government reserved and exercised the right to restrict or control the action of the contractor as to its general activities does not establish the existence of an agency relationship. . . .

" . . .

"It is also without significance that all of the real and personal property utilized in performing the contract was owned by the government. [Citing cases.] The same is true with regard to the fact that the government exerted unusual

supervisory controls over every phase of the contractor's activity. [Citing case.]"

In *United States v. Brown*, 41 F. Supp. 838 (1941), the contention was rejected that certain Regional Agricultural Credit Corporations, created pursuant to federal enactment, were immune from state taxation because the United States owned all of the capital stock of the corporations. The court said (p. 840):

"Whether or not these Regional Corporations shall enjoy sovereign immunity from taxation is wholly a question of Congressional intent. They are purely commercial corporations exercising no sovereign function. In the absence of statutory provision, there is no reason why they should be exempted from taxation, especially in view of Congressional policy concerning this type of corporation, evidenced by many statutory provisions expressly subjecting the real property of similar corporations to taxation.

"The mere fact that the United States owns all the capital stock of these corporations is not alone sufficient to endow them with sovereign immunity, nor do they acquire such immunity merely because they are the medium through which the Government carries out certain proprietary activities. Note, 83 L. Ed. 799 et seq.

" . . .

"When a corporation is created for commercial as distinguished from Governmental purposes, it is ordinarily implied in the absence of statutory provisions to the contrary, that such corporation shall have all the requisites and responsibilities of corporate existence, even though the United States owns all the stock. Such a corporation is an entity separate from the United States. *United States v. Strang*, 254 U. S. 491, 41 S. Ct. 165, 65 L. Ed. 368."

We conclude that the mortgagor-builder corporation, having served an independent and distinct purpose in the taxable event, is not a federal agency.

Further, Congress has not expressed a legislative intent to immunize a Capehart corporation from state taxation. The invitations to bid expressly provided:

"Nothing in this Invitation for Bids shall be deemed to relieve the eligible builder of any liability for the payment of sales or use taxes properly levied."

For the reasons stated, the sales tax was "properly levied" upon these transactions. Appellants, under the statute, were obligated to collect the tax from the mortgagor-builder corporations. Having failed to collect it, appellants are liable for the tax. RCW 82.08.050, *supra*.

The judgments are affirmed.

FINLEY, ROSELLINI, HAMILTON, and HALE, JJ., concur.

HUNTER, J. (dissenting)—The majority say that the sales tax must fall upon the person legally obligated to pay for construction of the military housing. With this I agree.

The majority then state that, by the express terms of the contract with the mortgagor-builder, the Delaware corporation, and not the United States was legally obligated to pay the appellant contractors; hence, the corporation was the buyer under the statute. The fact that the ultimate economic burden of the tax may fall upon the United States does not constitute it as the person legally obligated to pay the tax. Neither do I disagree with this rationale.

It is my disagreement with the majority in the disposition of the issue relating to whether the mortgagor-builder corporation is an instrumentality of the United States that brings me to a result contrary to that of the majority in this case.

Under the established rule for the construction of contracts, a contract must be picked up by its four corners and considered in its entirety. In so doing, it is inescapable to conclude other than that the prime purpose of the housing contract was the construction of military housing for the exclusive use of the United States. It was necessarily the obligation of the government to pay for this housing and, although it did not wish to be directly obligated, the United States, in causing the Delaware corporation to be organized, did so to provide a means to carry out its obligation to compensate the contractors for the construction of this housing.

In *Clallam Cy. v. United States*, 263 U. S. 341, 68 L. Ed. 328, 44 S. Ct. 121 (1923), it was held that a corporation created for the purpose of operating a sawmill and railroad

for the promotion of the war effort and wholly owned by the United States was an instrumentality of the United States. The court there said:

"In short the Spruce Production Corporation was organized by the United States as an instrumentality for carrying on the war, all its property was conveyed to it by or bought with money coming from the United States and *was used by it solely as means to that end,* and when the war was over it stopped its work except so far as it found it necessary to go on in order to wind up its affairs. . . .

" . . .

"The State claims the right to tax on the ground that taxation of the agency may be taxation of the means employed by the government and invalid upon admitted grounds, but that taxation of the property of the agent is not taxation of the means. We agree that it 'is not always, or generally, taxation of the means,' as said by Chief Justice Chase in *Thomson v. Pacific Railroad,* 9 Wall 579, 591. But it may be, and in our opinion clearly is when as here not only the agent was created but all the agent's property was acquired and used, for the sole purpose of producing a weapon for the war. *This is not like the case of a corporation having its own purposes as well as those of the United States and interested in profit on its own account. The incorporation and formal erection of a new personality was only for the convenience of the United States to carry out its ends. . . .* " (Italics mine.)

Contemporaneous with the signing of the housing contract, the stock of the corporation in the instant case was irrevocably placed in escrow, together with the resignation of the officers and directors, to be delivered to the United States at the conclusion of the construction of the housing. There was no possible contingency for the return of the stock to the stockholders or the documents of resignation to the officers and directors. The corporation owned nothing of any value in the housing being constructed. It served solely as a means to the end of obtaining military housing for the United States. There was no possibility for it to engage in any purpose other than to serve the end of obtaining military housing for the United States on this exclusive project. Because it had no purposes independent

of those of the United States, the corporation was nothing more than an instrumentality thereof.

The appellants cite *Green v. Eglin AFB Housing, Inc.*, 104 So. (2d) 463 (Fla. 1958), which is persuasive of their contention. There, under the authority of the Capehart Act, the government entered into a contract virtually identical with that of the instant case for the construction of military housing at the Eglin Air Force Base in Florida. The Florida court in effect found that the Delaware corporations were government instrumentalities, stating:

" 'The AFB corporations were created at the direction of the United States for the sole purpose of borrowing money to be expended in constructing facilities needed by the United States, to be repaid by the United States and further securing the payment of this money by a mortgage upon property of the United States. These corporations will continue in existence until the mortgage debts are paid, so as to provide a party against whom the mortgages may be foreclosed in the remote contingency that the United States defaults in its obligation to pay the mortgage debt.

" 'Even if we regard the AFB corporation as private enterprises, their interest in the property is so negligible—lessees without right of use or possession—as to make it entirely unrealistic to hold that it destroys the status of these buildings as a part of the public works of the United States.

" 'It is very doubtful if these corporations should be regarded as anything other than agencies or instrumentalities of the Federal Government. In Clallam County, Wash. v. United States [263] U. S. [341], [44 S. Ct. 121], 68 L. Ed. 328, the Supreme Court held that a corporation created for the purpose of operating a sawmill and railroad in the promotion of the war effort during the first World War and which was wholly owned by the United States was an agency of the United States and that its property was, therefore, immune from state taxation. In describing the corporation there involved the [sic] used language peculiarly applicable to each AFB corporation: "The incorporation and formal erection of a new personality was only for the convenience of the United States, to carry out its ends." The creation of the AFB corporations was only for the convenience of the United States to enable it to finance military construction in a manner determined by the Congress to be most conducive to the national interest. . . .' "

The limited function of the Delaware corporation, its power and purpose are aptly stated by the Michigan court in *Knapp-Stiles, Inc. v. Michigan Department of Revenue*, CCH 2 Mich. Tax Cases ¶¶ 200-202 (1962). There, as here, the contracts were for military housing under the Capehart Act. The court said relative to the corporations:

" . . . In the Invitation for Bids, which is prepared and issued by the United States, acting through the Department of the Air Force, there is found in Paragraph 1, above quoted, the following:

" 'The statute further contemplates that the Government-owned housing site be leased to a mortgagor or borrower corporation *which will act as a channel* for the proceeds of the mortgage loan from the lender to the successful bidder . . .'

"And a review of the documents—the lease, the contract, and the mortgage is convincing that this is substantially the only function that the Delaware corporations do perform.

"They have no real powers except to do the bidding of the United States. . . .

" . . .

"The corporations do not determine the terms of the contract. That is all done before the corporations come into existence. They do not determine whether the contract has been performed. They cannot modify its terms. They cannot terminate it.

"True, the corporations had a lease upon the premises. While this is nominally for a fifty-five year term, in fact, the actual possession, maintenance and operation of the housing is in the hands of the United States and its Air Force as soon as the housing is ready for occupancy.

"The United States alone determines the terms of the contract. It alone can modify or terminate it. It alone determines when it has been performed."

An analysis of *In re S. S. Silberblatt, Inc. v. Tax Comm. of the State of New York*, 5 N. Y. (2d) 635, 159 N. E. (2d) 195, 186 N. Y. S. (2d) 646 (1959), cited by the majority, discloses that the opinion is based on the erroneous premise that the Delaware corporations were " . . . created for a commercial purpose for private profit, as distinguished from a governmental purpose." As heretofore stated, consideration of the housing contract in its entirety cannot

support such a conclusion. The analysis of the housing contract and the reasoning of the dissent in the *Silberblatt* case is correct.

" . . . Although under our State law the tax is imposed upon the recording of the mortgage (*Franklin Soc. v. Bennett*, 282 N. Y. 79), this case is controlled by Federal law under which the tax is on the mortgage itself, which is a Federal instrumentality exempt from State taxation (*Federal Land Bank v. Crosland*, 261 U. S. 374; . . . ). Unlike the Wherry Act, the Capehart Act, under which this military housing project was authorized, renders petitioner-appellant merely a builder and not a private sponsor of the military housing. The United States, through its Department of Defense, is the sponsor, financier and owner of the entire project. The mortgagor corporations are mere fictions, and they and the mortgagee banks had no other function in this business than to act as agents for the Federal Government (*Clallam County v. United States*, 263 U. S. 341, 345; *Railroad Co. v. Peniston*, 18 Wall. [85 U. S.] 5, 42). . . . "

The majority attempt to distinguish the *Clallam County* case on the basis that the corporation there had no purpose other than to produce war materials for the United States government, and it quotes from the *Clallam County* case as follows:

" ' . . . This is not like the case of a corporation having its own purposes as well as those of the United States. . . . ' "

The inference from this quotation which is desired by the majority is that the Delaware corporation had purposes other than those of the United States government. This is erroneous and unsupported by the record.

The holding of the cases cited by the majority, *E. I. Du Pont de Nemours & Co. v. State*, 44 Wn. (2d) 339, 267 P. (2d) 667 (1954), and *United States v. Brown*, 41 F. Supp. 838 (1941), is not inconsistent with the *Clallam County* case since the corporations, in those cases, were not instrumentalities of the United States because they had separate commercial purposes for private profit.

In the instant case we should hold that, although the mortgagor-builder is the "buyer" to whom the retail sale

of the housing project construction was made, it was nothing more than an instrumentality of the United States government; that it had no commercial purpose other than for the convenience of the United States, serving as a means to the end of obtaining this military housing; and that the sovereign immunity of the federal government applies.

The judgment of the trial court should be reversed, and the cause remanded with instructions to enter judgment restraining the Tax Commission from imposing the tax and to permit recovery of the tax which appellants paid under protest.

HILL, DONWORTH, and WEAVER, JJ., concur with HUNTER, J.

September 26, 1963. Petition for rehearing denied.