[No. 41377.    En Banc.    May 13, 1971.]

F. D. RICH CO., INCORPORATED, *Appellant*, v. THE STATE OF
WASHINGTON *et al.*, *Respondents.*

*Helsell, Paul, Fetterman, Todd & Hokanson*, by *Thomas
Todd, John R. Stocker*, and *Lawrence Gochberg*, for ap-
pellant.

*Slade Gorton, Attorney General, Timothy R. Malone* and
*Henry W. Wager, Assistants*, for respondents.

HUNTER, J.—This is an action by the plaintiff (appel-
lant), F. D. Rich Co., Incorporated, a construction company,
to recover a retail sales tax paid under protest which was
levied against the plaintiff by the defendant (respondent),
the Washington State Tax Commission (now the Depart-
ment of Revenue), for construction of military housing at
the Fort Lewis Military Reservation.

The facts upon which this appeal is predicated are not in
dispute.

In 1961, after a determination of a need for military

housing at Fort Lewis, the Secretary of Defense, pursuant to title 4 of the housing amendments of 1955 as amended (popularly called the "Capehart Act"), issued an invitation for bids for the construction of housing units at Fort Lewis. The plaintiff submitted the lowest acceptable bid and the United States, by its letter of acceptability, dated February 5, 1962, designated the plaintiff as the "eligible builder." This created a binding contract between the plaintiff and the United States.

The letter of acceptability required the plaintiff to establish private "mortgagor-builder" corporations (Fort Lewis Homes No. 1, Inc. through Fort Lewis Homes No. 6, Inc.) under the laws of the state of Delaware, and to qualify these corporations to do business in the state of Washington. The plaintiff furnished each corporation with a total capitalization of $1,000 by purchasing 100 shares of $10 par value stock. The United States executed 55-year leases of the property upon which the housing was to be constructed to the "mortgagor-builder" corporations, and the $1,000 capitalization of each corporation was paid over to the United States as consideration for the lease.

The "mortgagor-builder" corporations obtained private financing for the construction of the housing by mortgaging their leasehold interest in the property, and then obtained a commitment from the Federal Housing Administration to insure their mortgage loans. The United States executed a written guarantee to pay the mortgage installment payments to the private mortgagee.

The plaintiff, the United States and the "mortgagor-builder" corporations entered into the "Housing Contract" which generally provided for the construction of the housing called for in the invitation for bids. Simultaneously, the capital stock of the corporations and the resignations of the officers and directors of each corporation were placed in an irrevocable escrow with the mortgagee. After the issuance of the determination of completion by the government, the escrow holder delivered the stock certificates and the resignations to the government.

In accordance with RCW 82.08.050, the defendant Tax Commission assessed retail sales taxes against the plaintiff in connection with the construction required by the housing contract. The plaintiff paid the retail sales tax under protest, and by this action the plaintiff seeks a refund in the amount of $283,312.04.

The trial court entered judgment in favor of the defendants. The plaintiff appeals.

The plaintiff contends that the "mortgagor-builder" corporations are instrumentalities of the United States and therefore are immune from state taxation.

The same issue was raised in the recent case of *Murray v. State*, 62 Wn.2d 619, 384 P.2d 337 (1963). The majority of this court there affirmed the trial court's holding in four "Capehart" cases consolidated for appeal, that the "Capehart" contractors were liable for payment of the retail sales tax for construction of housing under their contracts. One of the issues decided in that case was whether the "mortgagor-builder" corporations were instrumentalities of the federal government, thus sharing in the government's tax immunity, and the majority of this court therein concluded that the corporations were not agents or instrumentalities of the United States and therefore were not immune from state taxation.

The plaintiff does not suggest, nor are we contemplating reversing the holding in the *Murray* case. Rather, it is the plaintiff's contention that the factual differences between the present case and the *Murray* case, clearly indicate that the "mortgagor-builder" corporations are instrumentalities of the United States having no independent and distinct purpose or existence.

We have carefully examined the record relative to the asserted factual differences between the instruments in the *Murray* case and the instant case, and find the instruments involved in both cases to be essentially the same. In the *Murray* case, we held that the "mortgagor-builder" corporations were not agents of the United States for two reasons: (1) they served a purpose which was separate and

distinct from that of the United States; and (2) the Capehart Act evidenced no congressional intent to immunize such corporations from state taxation.

It may be true, as the plaintiff contends, that the factual differences indicate a greater degree of governmental control over the corporations in the present case. However, these differences do not change the underlying purpose and function of the "mortgagor-builder" corporations which was to arrange for private financing to pay the contractor. The contractor, and not the federal government, created the corporations for its own interest of receiving payment for services and materials. As in the *Murray* case, we conclude that the corporations served an independent and distinct purpose from that of the United States, and the mere fact that the government restricted the activities of these corporations does not establish an agency relationship with the United States.

In *Murray v. State, supra,* we cited *S. S. Silberblatt, Inc. v. Tax Comm'n,* 5 N.Y.2d 635, 159 N.E.2d 195, 186 N.Y.S.2d 646 (1959), and *United States v. Brown,* 41 F. Supp. 838 (S.D. Fla. 1941), for the general rule that the granting of sovereign immunity from taxation is wholly a question of congressional intent and must be expressly so provided. There is no language in the Capehart Act, nor in any of the instruments involved, which indicate that the corporations are immune from taxation. To the contrary, in the instant case there is language in paragraph 11 of the invitation for bids which requires the "mortgagor-builder" corporations to pay mortgage taxes and fees and state franchise taxes. This language is inconsistent with any suggestion that Congress intended the corporations to be immune from state taxation.

The plaintiff further contends that the materials furnished and the services performed in the construction of the houses constituted a sale between it and the United States, which was therefor constitutionally immune from the imposition of the retail sales tax.

This contention was also raised in the *Murray* case.

In answer thereto, the majority in *Murray*, 62 Wn.2d at 624, stated:

> [T]he buyer is the person who is *legally obligated* to pay the seller in any transaction. The housing contract executed by the parties provided that "The mortgagor-builder [corporation] shall pay the eligible-builder [contractor] for the performance of this Housing Contract, and all other obligations of the eligible builder herein, . . ." By the express terms of the contract, the corporation, and not the United States, was obligated to pay the appellant contractors; hence, the corporation was the buyer under the statute. Under the provisions of the Capehart Act and the facts in the instant case, the United States government was not obligated to pay the seller. The fact that the ultimate economic burden of the tax may fall upon the United States does not vitiate a state tax on the transactions. *Alabama v. King & Boozer, supra* [314 U.S. 1, 86 L. Ed. 3, 62 S. Ct. 43 (1941)]; *Kern-Limerick, Inc. v. Scurlook, supra* [347 U.S. 110, 98 L. Ed. 546, 74 S. Ct. 403 (1954)]; . . .

It is the plaintiff's contention that the present case is distinguishable from *Murray*, because of certain language in paragraph 29 of the housing contract, not appearing in *Murray*, which allows the United States Army to terminate the contract at its convenience and provides that the army shall pay or cause the "mortgagor-builder" corporations to pay the amounts due. The plaintiff suggests that this language clearly indicates that the United States undertook a contractual obligation to pay. Further, the housing contract in the present case did not restrict the amounts payable to the "eligible builder" to the amount of the mortgage proceeds, therefore the plaintiff concludes that the United States could, under certain circumstances, make payments directly to the contractor.

The fallacy with this contention is that (1) the army did not terminate the contract; and (2) the government did not make direct payments to the contractor, except for certain extras, in which case the government reimbursed the contractor for the amount of sales tax paid (which is not in issue). What the army or the United States might have

done to bring itself into the ambit of a buyer and create a taxable incident did not occur (except for the payment of certain extras which is not before us). This contention is without merit.

We have examined the cases decided in other jurisdictions since *Murray*, cited by the plaintiff. We find them either inapplicable or inconsistent with *Murray*. In the latter instance we are not disposed to follow their reasoning.

The plaintiff finally contends that the state retail sales tax, RCW 82.08, discriminates against contractors doing business with the United States for the reason that under rule 189, promulgated by the defendant Tax Commission, the retail sales tax does not apply to sales to city or county housing authorities created under the Washington Housing Authorities Law, RCW 35.82.

This contention must be premised upon retail sales being made to the United States Government. In the instant case we have held no sales were made to the United States Government. The plaintiff's reasoning is therefore a non sequitur, and this contention is also without merit.

The judgment of the trial court is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HALE, NEILL, McGOVERN, STAFFORD, and WRIGHT, JJ., concur.