132 P.3d 1143 (2006)
AARO MEDICAL SUPPLIES, INC.; Care Medical Equipment, Inc.; Deacon, Roger M. & Virginia C. dba Deacon's Medical Equipment; Homedco, Inc.; Inland Medical & Rehab, Inc.; John Gabriel Ryan Corporation dba Providence Medical Supply; Jones Low Priced Drugs, Inc.; Knoop, Robert & Charlene dba Allied Medical Equipment; Kuslers Pharmacy, Inc., dba Kuslers Home Health Supply; Medequip Services, Inc.; Medi-Rent, Inc; Medi-Rent North; North *1144 Central Wash Respiratory Care Services; Puget Sound Drug Corporation dba Key Drugs; Shea Home Medical Products, Inc.; Sound Medical Equipment, Inc.; Whidbey Patient Aids, Inc. dba Whidbey Home Medical Equipment, Appellant,
v.
STATE of Washington, DEPARTMENT OF REVENUE, Respondent.
No. 32486-5-II.
Court of Appeals of Washington, Division 2.
May 2, 2006.
Reconsideration Denied June 1, 2006.
Douglas Van De Brake, Attorney General's Office, Olympia, WA, for Respondent.
Raymond G. Dodge, Jr., Attorney at Law, Spokane, WA, for Appellant.
HUNT, J.
¶ 1 Aaro Medical Supplies, Inc., and several other vendors of durable medical equipment (Vendors) appeal summary judgment dismissal of their action against the Washington State Department of Revenue (Department) for refund of Washington sales taxes on medical products that Vendors sold to federal Medicare beneficiaries and for which the federal government paid Vendors on assignment. Vendors argue that (1) the real purchaser was the federal government, which is exempt from state taxes, not the Medicare beneficiaries; (2) therefore, the Department improperly exacted state taxes on these sales; (3) the Medicare price list for Vendors' products neither separately stated the sales tax, as required by former RCW 82.08.050 (1989),[1] nor included the sales tax in the price; (4) the Department unconstitutionally forced Vendors to remit taxes on these sales even though Vendors had not collected any sales taxes from the purchasers; and (5) the Department denied Vendors equal protection of the law because vendors in states without a sales tax retained the full Medicare list *1145 price, with no sales taxes subtracted, and thereby received more money for the same medical products.
¶ 2 We hold that, for purposes of RCW 82.08.050, the Medicare beneficiaries, not the federal government, are the buyers. Because RCW 82.08.050 requires a vendor to remit sales tax to the Department, regardless of whether the vendor collects the sales tax from the purchaser, we affirm. We do not find this action unconstitutional.

FACTS

I. TAXED SALES OF MEDICAL PRODUCTS TO FEDERAL MEDICARE BENEFICIARIES
¶ 3 Vendors, a group of Washington corporations and sole proprietorships, are retail sellers of durable medical equipment that sold medical products to federal Medicare program beneficiaries. Vendors agreed to accept direct, partial payment for these products from the federal government by assignment, rather than directly from the Medicare beneficiaries, who remained liable for a smaller portion of the cost. Medicare intermediaries[2] instructed Vendors not to charge state sales tax on these medical products because the federal government is not liable for state sales taxes on its purchases.
¶ 4 Following the intermediaries' instruction, Vendors did not collect sales tax from the federal government or from the federal Medicare beneficiaries who received the medical products. Nevertheless, the Department required Vendors to remit state sales taxes on these transactions on grounds that the Medicare beneficiaries, not the federal government, were the purchasers. Vendors remitted these taxes under protest, paying the money from the purchase prices they had collected from the federal government and the Medicare beneficiaries.

II. PETITION FOR TAX REFUND
¶ 5 On December 30, 1994, Vendors petitioned the Department's Appeals Division for a refund of sales taxes the Department had collected from them between 1990 and 1994 on Medicare beneficiaries' purchases from Vendors under the federal assignment program. Vendors argued that when the federal government pays a Vendor for Medicare beneficiary purchases through assignment, these purchases are "by the federal government" and, therefore, "are constitutionally tax exempt."
¶ 6 On April 30, 1996, the Department's Appeals Division rejected Vendors' claims for the following reasons: (1) The Medicare beneficiaries, not the federal government, were the purchasers of Vendors' medical products, even when the federal government paid Vendors for these products on the beneficiaries' behalf by assignment; (2) thus, the sales were not exempt from state sales tax by virtue of federal exemption; and (3) therefore, under state law, Vendors are not entitled to a refund of the sales taxes they remitted on these sales.

II. JUDICIAL APPEALS
¶ 7 Vendors filed a Notice of Tax Appeal with the Thurston County Superior Court. Vendors again argued that (1) they were entitled to a tax refund for sales taxes on their sales of durable medical goods to Medicare beneficiaries from 1990 through 1994, for which the federal government paid by assignment; (2) the Department wrongfully forced Vendors to pay the Washington state sales taxes, in contravention of RCW 82.08.050; (3) this sales tax collection violated Vendors' federal and state constitutional rights to equal protection of the laws; and (4) the Department thereby forced Vendors to violate federal law by requiring them knowingly and willingly to make false statements of price when applying for benefit payments under the Medicare program, in contravention of 42 U.S.C. § 1320a-7b(a).
¶ 8 Vendors moved for summary judgment. The Department responded, opposing Vendors' request for summary judgment and requesting summary judgment for the Department. The trial court (1) ruled that the Medicare beneficiaries, not the federal government, were the buyers of the products and, therefore, the federal sales tax exemption *1146 did not apply; (2) denied Vendors' motion for summary judgment; and (3) granted summary judgment to the Department.
¶ 9 Vendors appeal.

ANALYSIS

I. SALES TAX ON MEDICAL EQUIPMENT PURCHASED BY MEDICARE BENEFICIARIES ON FEDERAL GOVERNMENT ASSIGNMENT
¶ 10 Vendors argue that the trial court erred in denying their motion for summary judgment and in summarily dismissing their action against the Department. Vendors contend (1) the Department wrongly exacted state sales taxes on their sales of medical products to federal Medicare beneficiaries, for which the federal government paid on assignment; (2) these purchases were, therefore, "purchases by the federal government that are constitutionally tax exempt," Clerk's Papers (CP) at 108; and (3) the Department owes Vendors a refund of these wrongly collected sales taxes. This argument fails.

A. Standard of Review
¶ 11 We review summary judgment de novo. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wash.2d 780, 787, 108 P.3d 1220 (2005). The moving party is entitled to summary judgment as a matter of law when there are no genuine issues of material fact. Owen, 153 Wash.2d at 787, 108 P.3d 1220. When reviewing a trial court's order for summary judgment, we construe the facts in the light most favorable to the non-moving party, here, the Vendors. Owen, 153 Wash.2d at 787, 108 P.3d 1220.
¶ 12 Nonetheless, a party opposing a motion for summary judgment cannot rest on "mere allegations or denials of his pleading, but in his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." CR 56(e). A party may offer an affidavit as evidence only if it would be admissible at trial. CR 56(e). Vendors meet this standard here.

B. Regulatory Background

1. Assigned Medicare payments
¶ 13 "Part B" of the federal Medicare Act, 42 U.S.C. §§ 1395-1395w-4, provides eligible individuals (beneficiaries) a voluntary supplemental benefits program, which Medicare beneficiaries use to purchase medical products, such as those Vendors sell. Under 42 U.S.C. § 1395K, a Medicare beneficiary is entitled to federal reimbursement for the cost of such items; alternatively, the beneficiary can have the federal government pay the vendor "on [the beneficiary's] behalf' through assignment. 42 U.S.C. § 1395k(1).
¶ 14 Assignment occurs when a supplier of medical products, such as Vendors, agrees to accept payment for these products from the government, rather than from the beneficiary who receives and uses the products:
Assignee means a physician or supplier who furnishes services to a beneficiary under Medicare part B and who has accepted a valid assignment executed by the beneficiary.
Assignment means the transfer by the assignor of his or her claim for payment to the assignee in return for the latter's promise not to charge more for his or her services than the carrier finds to be the reasonable charge or other approved amount.
Assignor means a beneficiary under Medicare part B whose physician or supplier has taken assignment of a claim.
42 C.F.R. § 405.802.
¶ 15 When a retail supplier or vendor agrees to accept such federal Medicare payment by assignment, the supplier/vendor must (1) "accept, as full charge for the service, the amount approved by the carrier as the basis for determining the Medicare Part B payment (the reasonable charge or the lesser of the fee schedule amount and the actual charge)"; and (2) limit charges to the beneficiary to "the difference between the Medicare approved amount and the Medicare Part B payment."[3] 42 C.F.R. § 424.55(b)(1)-(2)(ii). *1147 For durable medical equipment, such as the products sold here, Medicare pays 80 percent and the beneficiaries co-pay the re-maining 20 percent. 42 U.S.C. § 1395m(a)(1)(A).

2. State sales tax
¶ 16 Washington imposes a tax on the sale of goods in state. RCW 82.08.020. The "buyer" has the primary burden to pay this sales tax to the seller:
The tax hereby imposed shall be paid by the buyer to the seller, and each seller shall collect from the buyer the full amount of the tax payable in respect to each taxable sale in accordance with the schedule of collections adopted by the department pursuant to the provisions of RCW 82.08.060.
RCW 82.08.050 (emphasis added).
¶ 17 For purposes of RCW 82.08.020, the "buyer" is the person who is "legally obligated to pay the seller in any transaction." Murray v. State, 62 Wash.2d 619, 624, 384 P.2d 337 (1963), appeal dismissed, 378 U.S. 580, 84 S.Ct. 1910, 12 L.Ed.2d 1035 (1964). Although the buyer remains "primarily liable for payment of the tax," the seller must remit the sales tax to the Department regardless of "whether or not he has collected it and whether or not his failure to collect is attributable to his own fault." Morrison-Knudsen Co. v. Dep't of Revenue, 6 Wash.App. 306, 312, 493 P.2d 802 (1972).
¶ 18 To resolve the issue of whether Vendors are entitled to a sales tax refund here, we must first determine who were the "buyers" of Vendors' medical products within the meaning of RCW 82.08.050.

3. Buyer
¶ 19 Vendors argue that the federal government was the "buyer" under RCW 82.08.050 because (1) under Washington law, the "buyer" is the party legally obligated to pay the seller; (2) here, as a result of the assignment, the federal government was directly responsible for payment to Vendors; (3) therefore, the sales tax was invalid because the government is immune from such taxation; and (4) therefore, Vendors are entitled to a refund of the sales tax that the Department wrongly forced them to pay.[4]
¶ 20 The Medicare statute provides that, in cases of assignment, the federal government is responsible for paying 80 percent of the medical product's cost directly to the vendor, to whom the beneficiary is responsible for paying the remaining 20 percent. 42 U.S.C. 1395m(a)(1)(A). Thus, under a strict interpretation of Washington's sales tax statute, the federal government is arguably a "joint buyer" with the beneficiary. Nonetheless, we are not persuaded that such interpretation should control here.

a. Statutory interpretation
¶ 21 We review questions of law, including statutory construction, de novo. Pasco v. Pub. Employment Relations Comm'n, 119 Wash.2d 504, 507, 833 P.2d 381 (1992). We first look to the statute's plain language, giving effect to legislative intent. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 53, 905 P.2d 338 (1995). When reviewing an unambiguous statute, we derive the Legislature's intent from the plain language alone. Waste Mgmt. of Seattle, Inc., v. Util. & Transp. Comm, 123 Wash.2d 621, 629, 869 P.2d 1034 (1994). Such is the case here.

b. RCW 82.08.050
¶ 22 As we note above, the plain language of RCW 82.08.050 provides that the buyer "shall" pay the sales tax to the seller, which the seller "shall collect from the buyer." The Washington Supreme Court has held that, under this statute, the "buyer" is the person who is "legally obligated to pay the *1148 seller in any transaction." Murray, 62 Wash.2d at 624, 384 P.2d 337.[5]
¶ 23 No Washington case has addressed whether the federal government is the "buyer" for purposes of RCW 82.08.050(1) when a Medicare program beneficiary purchases a covered medical item from a Vendor on an assignment basis, such as occurred here. Other state courts, however, have addressed similar issues.
¶ 24 In Akron Home Medical Services, Inc., v. Lindley, 25 Ohio St.3d 107, 495 N.E.2d 417 (1986), for example, a retailer of durable medical equipment argued that he should not have to pay Ohio's state sales tax on items he sold to Medicare beneficiaries because the payments for these sales came from the federal government, which is immune from state taxation. Akron Home Medical, 495 N.E.2d at 421. Ohio's sales tax statute provided that the consumer of goods bore the burden of paying the sales tax. Akron Home Medical, 495 N.E.2d at 421.
¶ 25 The Ohio Supreme Court concluded that the federal government was not the consumer and, therefore, the state sales tax applied to Medicare recipients' purchase of medical products, even though the federal government reimbursed part of the purchase price:
It is, of course, axiomatic that a state may not levy a direct tax on the federal government or an instrumentality thereof. However, the mere voluntary payment by the federal government of an obligation incurred by a Medicare recipient hardly rises to the level of a direct tax. As a factual matter, the purchaser selects the supplier of medical devices, receives title to as well as possession of the personal property sold, and is the person against whom the sales tax is ultimately levied. The federal government, after the fact of the taxable sale, determines how much of the purchase price is reimbursable. No portion of the sales tax is owed by or collectible from anyone not the consumer. Accordingly, R[evised]C[ode] 5739.02(B)(10) is inapplicable to the sales transactions herein.
Akron Home Medical, 495 N.E.2d at 421 (citations omitted) (emphasis added).
¶ 26 The Supreme Court of Missouri reached a similar conclusion in Medic House, Inc. v. Director of Revenue, 799 S.W.2d 80, 83 (Mo.1990). A retail seller of durable medical equipment challenged the imposition of state sales tax on sales to Medicare beneficiaries, arguing that "Medicare does not reimburse appellant for the sales tax charge," thereby suggesting that the tax violated the Supremacy Clause. Medic House, 799 S.W.2d at 83. Relying on Akron, the Missouri Supreme Court held that sales of such medical products to Medicare beneficiaries were not exempt from Missouri sales taxes.[6]Medic House, 799 S.W.2d at 83.
¶ 27 As we discuss above, (1) the federal government may pay Medicare benefits directly to the beneficiary, in which case both the Department and Vendors agree that the beneficiary is the sole "buyer" and, therefore, liable to pay the purchase price to the vendor; *1149 or (2) the vendor may agree to allow the federal government to pay a portion of the purchase price directly to the vendor through assignment from the Medicare beneficiary according to statutory conditions, including the Medicare price list.[7] 42 U.S.C. 1395k(a)(1); 42 C.F.R. 405.802. But, as the Ohio Supreme Court noted in Akron, regardless of who ultimately pays for the medical products, the Medicare beneficiary is the one who identifies the product, orders it from the vendor, incurs the primary obligation to pay for it, takes possession of it, becomes the owner of it, and uses it.
¶ 28 Therefore, we agree with the trial court that here, the Medicare beneficiaries, not the federal government, were the "buyers" under RCW 82.08.050. Unlike the federal government, the Medicare beneficiaries were not exempt from Washington sales taxes. Accordingly, we hold that the state sales tax applied to Vendors' sales of durable medical products to Medicare beneficiary buyers, who by statute were liable for the payment of the sales tax.

II. SALES TAX REFUND
¶ 29 Our holding that the Medicare beneficiaries were the buyers, liable for the sales taxes, however, does not resolve whether Vendors are entitled to refunds. Vendors argue that the Department wrongfully forced them to remit sales taxes on the medical products they sold to Medicare beneficiaries even though Vendors, following Medicare intermediaries' instructions, never collected such taxes from either the immune federal government or the Medicare beneficiary "buyers." This argument also fails.

A. Standing
¶ 30 The Department contends that Vendors lack standing to seek sales tax refunds because (1) Vendors did not pay the sales tax themselves but, rather, passed the sales tax money through from the buyers to the Department; and (2) Vendors did not first refund the sales tax to the buyers, as required under WAC 458-20-229(3)(b)(ii)[8] and explained by Excise Tax Authority (ETA) 299.32.229 (1998). The record does not support these assertions.
¶ 31 Vendors counter that (1) the Medicare program compels them to pay the retail sales taxes themselves, rather than allowing them to pass it through to the buyers, as they otherwise would do; (2) therefore, Vendors are not required to reimburse buyers before seeking refunds, especially where the beneficiary-buyers never paid any sales taxes; and (3) consequently, Vendors have standing to seek refunds of these sales taxes from the Department. We agree with Vendors that they have standing.

B. No Issue of Material Fact
¶ 32 Vendors argue that there remains a central issue of material fact: Were sales taxes included in the assigned medical-product amounts the federal government paid Vendors on behalf of its Medicare beneficiaries or did the Department force Vendors to pay the sales taxes themselves because, following the Department's earlier directive, Vendors never collected the taxes as part of the payments they received for the medical products? They further argue that the answer to this question of fact depends, in turn, on the answer to the following related question: Did Medicare's list prices for medical products include state sales taxes?
¶ 33 In our view, the answers to these questions are irrelevant because (1) under RCW 82.08.050, Vendors were liable to the Department to remit taxes on taxable sales, whether or not collected from the buyers;[9] and (2) the transactions at issue here were such taxable sales, in light of our holding that the Medicare beneficiaries, not the exempt *1150 federal government, were the buyers of Vendors' medical products.
¶ 34 RCW 82.08.050 provides, in part, that excise, or sales, taxes:
For purposes of determining the tax due from the buyer to the seller and from the seller to the department it shall be conclusively presumed that the selling price quoted in any price list, sales document, contract or other agreement between the parties does not include the tax imposed by this chapter, but if the seller advertises the price as including the tax or that the seller is paying the tax, the advertised price shall not be considered the selling price.
(Emphases added.)[10]
¶ 35 The Department contends that the list price necessarily included sales taxes; thus, it factored out the sales tax from the list price. Nonetheless, the statutory presumption of sales tax non-inclusion in a sales price list remains.[11]See RCW 82.08.050; WAC 458-20-107(c). And RCW 82.08.050 required Vendors to remit sales taxes, whether or not they collected these sales taxes from the Medicare-beneficiary buyers.[12]
¶ 36 Although, as Vendors argue, this result is unfair because it requires them to remit sales taxes from their own pockets, it would also be unfair to shift onto Washington taxpayers the burden of uncollected sales taxes on Vendors' transactions with Medicare beneficiaries. What works this inequity on Vendors, however, is the federal government's Medicare-reimbursement system, not our state's sales-tax collection system. Accordingly, Vendors' remedy, if any, would be to ask the federal government to adjust its Medicare-reimbursement program to eliminate the unfair disparities in payment among *1151 vendors of durable medical products sold to Medicare beneficiaries.
¶ 37 Affirmed.
We concur: BRIDGEWATER, J., and QUINN-BRINTNALL, C.J.
NOTES
[1] For purposes of this opinion, we refer to the 1989 version of RCW 82.08.050, in effect during the first year of Vendors' disputed sales tax payments to the Department. There were no substantive changes to the statute through 1994, the last year of Vendors' disputed tax payments.
[2] These Medicare intermediaries included King County Medical Blue Shield and Pierce County Medical, insurance companies with apparent responsibility for administering Medicare funds.
[3] Under the Medicare program, payment for a covered medical product "shall be made in the frequency specified in paragraphs (2) through (7) and in an amount equal to 80 percent of the payment basis described in subparagraph (B)." 42 U.S.C. § 1395m(1)(A). The payment basis is the lesser of "the actual charge for the item" or the payment amount set by statute. 42 U.S.C. § 1395m(a)(1)(B).
[4] The Department argues that the Medicare beneficiary, not the federal government, was the actual "buyer" because assignment of payment merely "transfers the right to receive the benefit payment from the patient to the supplier." Br. of Respondent at 14.
[5] In Murray, several contractors sued to recover Washington state retail sales taxes paid under protest and to enjoin assessment of the state retail sales tax on construction of military housing. Murray, 62 Wash.2d at 620, 384 P.2d 337. The Court held that (1) "consumers" and "buyers" are not statutory equivalents in Washington, Murray, 62 Wash.2d at 623, 384 P.2d 337; (2) the mortgagor-builder corporations were the "buyers," obligated to pay the state retail sales tax to the contractors, because, by the "express terms" of the contract between the corporations and the United States, the corporations were "obligated to pay" the contractors, Murray, 62 Wash.2d at 624, 384 P.2d 337; and (3) "that the ultimate economic burden of the tax may fall upon the United States does not vitiate a state tax on the transactions." Murray, 62 Wash.2d at 625, 384 P.2d 337.
[6] Although Medic House does not explain who pays the sales taxes on such medical products, the Missouri code provides that the seller bears this burden. Mo. ANN. STAT. § 144.021 (West 2005) ("The primary tax burden is placed upon the seller making the taxable sales of property or service."). Here, in contrast, Washington's tax burden falls on the buyer. And, as we previously noted, the "buyer" is the party liable for payment of the purchase price, not the party who uses the purchased product. Murray, supra n. 3. Nonetheless, as in Missouri, Washington requires the seller to remit the sales tax to the Department, even when the seller has not collected the sales tax from the buyer.
[7] We note that Medicare beneficiaries have no say in such assignments.
[8] Although the Department cites WAC 458-20-229(3)(b)(i), it appears the Department intended to cite WAC 458-20-229(3)(b)(ii).
[9] RCW 82.08.050 provides, in pertinent part:

In case any seller fails to collect the tax herein imposed or, having collected the tax, fails to pay it to the department in the manner prescribed by this chapter, whether such failure is the result of his own acts or the result of acts or conditions beyond his or her control, he or she shall, nevertheless, be personally liable to the state for the amount of the tax.
[10] Consistent with the plain language of RCW 82.08.050, WAC 458-20-107(1)(c) explains that this statutory presumption of sales tax non-inclusion in the list price is irrebuttable and not overcome by any oral or written agreement between the parties:

RCW 82.08.050 specifically requires that the retail sales tax must be stated separately from the selling price on any sales invoice or other instrument of sale, i.e., contracts, sales slips, and/or customer billing receipts.... This is required even though the seller and buyer may know and agree that the price quoted is to include state and local taxes, including the retail sales tax. The law creates a "conclusive presumption" that, for purposes of collecting the tax and remitting it to the state, the selling price quoted does not include the retail sales tax. This presumption is not overcome or rebutted by any written or oral agreement between seller and buyer. However, selling prices may be advertised as including the tax or that the seller is paying the tax and, in such cases, the advertised price shall not be considered to be the taxable selling price under certain prescribed conditions explained in this section. Even when prices are advertised as including the sales tax, the actual sales invoices, receipts, contracts, or billing documents must list the retail sales tax as a separate charge. Failure to comply with this requirement may result in the retail sales tax due and payable to the state being computed on the gross amount charged even if it is claimed to already include all taxes due.
(emphases added).
[11] We note that Vendors voluntarily entered into the federal Medicare-assignment agreement. Vendors could have declined federal assignment and obtain payment directly from beneficiaries. By their own admission, Vendors would then have been able to charge the beneficiaries the sales tax.

On the record before us, it is not clear whether federal Medicare has a policy to reimburse Medicare beneficiaries for sales taxes on medical product purchases. But even if Medicare had such a program during the sales at issue here, program administrators apparently do not uniformly follow it among the various states. For example, see Medic House, 799 S.W.2d 80, in which the Missouri court states that Medicare does not reimburse for sales tax in Missouri. Medic House, 799 S.W.2d at 83. Nor is it clear what sales-tax policy Medicare followed for payments to Vendors on assignment from Medicare beneficiaries in the State of Washington.
Here, Vendors do not directly attack the constitutionality of the Washington state sales tax; instead, they challenge the constitutionality of the Department's application of the sales-tax statute to them. Nonetheless, Vendors' denial of equal protection argument is one they must raise to federal Medicare administrators. If, as Vendors assert, the Department's requirement that they remit non-reimbursable sales taxes resulted in inequities among Medicare vendors in various states, these inequities stem from the federal Medicare price list and reimbursement system, not from Washington's state sales tax system. Vendors, therefore, must seek a remedy in the appropriate federal forum, not in state court.
[12] For this reason, we need not address the remaining issues raised on appeal.